## HANESLEY v. NATIONAL PARK BANK.

1. Although a city court has no jurisdiction to grant affirmative equitable relief, it may entertain jurisdiction of an equitable plea·purely defensive in its nature.
2. The equitable remedy of marshaling securities will not be so extended as to delay or inconvenience a creditor in the collection of his debt secured by collateral notes, by confining him to particular collaterals at the instance of one whose note is included among the collaterals and who claims an equitable set-off against the payee of his note.

JUNE 14, 1917.

Equitable petition. Before Judge Littlejohn. Sumter superior court. August 4, 1916.

J. J. Hanesley brought suit against the National Park Bank of New York, to enjoin it from suing him in the city court of Americus on notes given by him to the Americus National Bank and indorsed by that bank as collateral to the National Park Bank. He alleged as follows: On December 31, 1913, being a customer of the Americus National Bank, he inquired of the assistant cashier as to the balance to his credit, and was informed that he had nothing to his credit. Plaintiff contended he should have a considerable amount to his credit, and took up the matter with the cashier, and at the same time made an application for a loan. The cashier authorized him to draw a check on the bank for $6280.32, stating that by the time the check was presented he would have plaintiff's account audited, and if the audit was not made by that time the plaintiff could give the bank his notes for the amount of the check, and if it should be discovered that his deposit account showed a credit, the notes could be credited by such deposit. On January 9, 1914, plaintiff gave to the Americus National Bank notes for $3225 and $3237.50, due respectively October 9 and October 26, 1914, and he was credited with $6000 on his deposit account. The Americus National Bank was indebted to the National Park Bank of New York in the sum of $71,737.95, and plaintiff's notes and other notes were hypothecated by the Americus National Bank as collateral security. The only transfer on plaintiff's notes, which were payable to the order of the Americus National Bank, was the following entry stamped on the back of the notes with a rubber stamp: "Pay to the order of any·bank or banker. Americus National Bank (All prior endorsements guaranteed), Americus, Ga. M. M. Lowery, Cashier." The Americus National Bank closed its

doors February 2, 1914, and its affairs were put into the hands of a receiver. After failure of the Americus National Bank, plaintiff had his account audited by the receiver, and the books disclosed that when he arranged to draw the check for $6280.32 there was to his credit $3770.26, for which amount the receiver issued his certificate to the plaintiff. This amount of $3770.26 was to his credit at the time he gave his notes, though the deposit entries were not made on the books of the bank. Since the failure of the Americus National Bank, plaintiff has made several payments on his notes; the aggregate payments on the note for $3225 being $2117.86, and the aggregate payments on the note for $3237.50 being $2274.43. At the time of the transfer of plaintiff's notes by the Americus National Bank to the National Park Bank of New York he had on deposit in the former bank approximately $4000, which at the time of the execution of the notes was concealed from him, and it was understood and agreed between the cashier of the Americus National Bank and the plaintiff, at the time of the execution by the plaintiff of his notes, that whatever balance or deposit he had in the bank would be credited upon his notes, and the right of credit under this agreement existed in his favor at and prior to the time of the transfer and delivery of his notes to the National Park Bank; and in law, under such agreement, his notes are credited with the amount of this deposit. The National Park Bank is not a bona fide holder of plaintiff's notes, for lack of legal indorsement; and plaintiff is entitled, on account of the insolvency of the Americus National Bank, to set off his deposit with that bank, which was fraudulently concealed from him. The payments of the various amounts that he made upon the notes were made in ignorance of plaintiff's rights in the premises. The National Park Bank has collected, as dividends from the receiver of the Americus National Bank and from collaterals held by it, all of its indebtedness except about $10,000; and there now remains, of the collateral held by the National Park Bank, notes amounting to approximately $45,000, "many of which receivables are solvent and are collectible," a list of them being attached. In view of the insolvency of the Americus National Bank and of the fact that that bank is indebted to the plaintiff in the sum of $3770.26, it will be inequitable to allow the National Park Bank to prosecute a suit against petitioner on his notes for the balance as due thereon;

because, when the National Park Bank collects the balance of the $10,000 that is due to it, the collaterals held by the bank will be returned to the receiver of the Americus National Bank as its assets, and plaintiff would then be entitled to a set-off of his claim against the balance that is due on the notes; and as the National Park Bank has a sufficient amount of solvent securities out of which it can collect the balance that is due it, the plaintiff is entitled to this relief. The prayer is, to enjoin the National Park Bank from filing a suit on the notes in the city court of Americus; that the bank be required to litigate with plaintiff as to its rights in and to the notes in this action; and that the plaintiff be allowed to set off, to the extent of the amount that is due on the notes, the amount to his credit in the Americus National Bank; and for general relief. The petition was amended by alleging the amounts and dates of the notes given by the Americus National Bank to the National Park Bank, as follows: All notes dated January 20, 1914; two for $10,000 each, due on February 16 and March 10, 1914; and one for $30,000, on demand. These notes represented past-due obligations, and were in renewal of prior notes; and at the time the renewal notes were given, the Americus National Bank did not receive from the National Park Bank any present consideration. At the time of the execution of the notes of the Americus National Bank to the National Park Bank, and at the time of the pledging of the plaintiff's notes with the National Park Bank, the Americus National Bank was insolvent, and its insolvency was well known to the cashier at the time he pledged the plaintiff's notes, and the pledge of his notes was made in contemplation of insolvency; and the National Park Bank, as plaintiff is advised and believes, knew that the Americus National Bank was insolvent; and the pledge of the plaintiff's notes under these circumstances was fraudulent and void against the creditors of the Americus National Bank, because the same was in contemplation of insolvency, in violation of the laws governing national banks, as the same amounted to a preference. The defendant filed demurrers, general and special, which were sustained by the court, and the action was dismissed.

*R. L. Maynard,* for plaintiff. *Wallis & Fort,* for defendant.

EVANS, P. J. (After stating the foregoing facts.) The plaintiff seeks to enjoin the New York bank from instituting, in the

city court of Americus, a suit on a note given by him to the Americus bank and hypothecated by that bank, on the grounds: (1) that the indorsement of his note by the Americus bank to the New York bank was done with a rubber stamp, which is not an indorsement in writing within the purview of the doctrine that the holder of a note payable to order, as collateral, is not such a bona fide holder for value as to be protected against equities and against set-off by the maker, unless the note is indorsed in writing by the payee, and that he is entitled to set off against the note his counter-claim against the Americus bank; (2) that his note was transferred by the Americus bank to the New York bank to secure an existing indebtedness, in contemplation of insolvency, and is void as a preference, and that he is entitled to set off, against his note in the hands of the New York bank, an indebtedness due him by the insolvent Americus bank; and (3) that under the facts alleged he is equitably entitled to have the New York bank marshal its securities, so that it can receive full payment of its notes against the Americus bank and at the same time give him the right of set-off against his note for the amount the Americus bank is due him.

1. With respect to the first and second grounds for injunction, the plaintiff clearly fails to show a right to injunctive relief. The law is settled in this State that while a city court has no jurisdiction to grant affirmative equitable relief, it may entertain jurisdiction of an equitable plea purely defensive in its nature. *House* v. *Oliver*, 123 *Ga.* 784 (51 S. E. 722). The plaintiff can litigate in the city court with the New York bank, testing the validity of the transfer of his note, as entitling him to plead his set-off against the Americus bank in partial or total discharge of liability on his note.

2. The plaintiff insists that the New York bank holds other notes hypothecated by the Americus bank as security for the indebtedness of the Americus bank to it; and that, having the right to set off his obligations with the Americus bank against that bank, equity will compel the New York bank to marshal its securities, so that it can receive full settlement of the obligations of the Americus bank to it, and give the plaintiff the right of set-off for the debt which he claims against the Americus bank. The general rule of compulsory election is thus stated in the Civil Code (1910), § 3220: "As among themselves, creditors must so prosecute their own rights as not unnecessarily to jeopard the rights of others;

hence a creditor having a lien on two funds of the debtor, equally accessible to him, will be compelled to pursue the one on which other creditors have no lien." This doctrine is inapplicable to the facts of this case. The New York bank is not claiming a lien or any other right to the deposit which the plaintiff had in the Americus bank. The doctrine of two funds applies only to cases where contending creditors have a common debtor. *Carter* v. *Neal*, 24 *Ga.* 346 (5), 353 (71 Am. D. 136). A holder of a note as collateral security for a debt stands upon the same footing as a purchaser. Civil Code (1910), § 4289. If the collateral note be given to secure a pre-existing indebtedness, the holder is entitled to the same protection as a bona fide purchaser. *Harrell* v. *National Bank of Commerce*, 128 *Ga.* 504 (57 S. E. 869). The New York bank holds all the notes as collateral to the notes of its principal debtor, the Americus bank. A creditor may lawfully take and hold several securities for the same debt, and can not be compelled to yield up either until the debt is paid. Union Bank *v.* Laird, 2 Wheat. 390 (4 L. ed. 269). The collateral notes are not in the hands of the Americus bank or its receiver as assets of the Americus bank; and the plaintiff is asking a court of equity to compel an election by the New York bank to satisfy its own debt out of its own property, based on the predicate that he was a creditor of the Americus bank to the extent of his deposit. Equity will not delay or inconvenience a creditor in the collection of his debt secured by collateral notes, by confining him to one of his collaterals, at the instance of one whose note is included among the collaterals, and who claims an equitable set-off against the payee of his note. See 6 Pom. Eq. Jur. § 866; *Green* v. *Ingram*, 16 *Ga.* 164.        *Judgment affirmed. All the Justices concur.*