**In the Matter of Estina L. CHILDERS, d/b/a De Gevulde Hoorn now Estina's, Debtor.**

**Bankruptcy No. 82–07213.**

United States Bankruptcy Court, N.D. Alabama, N.D.

Aug. 13, 1984.

sec. 353 (1982) (opinions of other circuits are entitled to great respect but are not binding on Courts of Appeals).

**24**

H. Kenan Timberlake, Huntsville, Ala., trustee.

Joe M. Dawson, Dawson & McGinty, Scottsboro, Ala., for debtor.

Morgan Weeks, Weeks & Weeks, Scottsboro, Ala. for Central Bank of the South, N.A.

## ORDER

EDWIN D. BRELAND, Bankruptcy Judge.

This matter is before the Court on the motion of the trustee, H. Kenan Timberlake, for an accounting of the personal property claimed as exempt by the debtor and for a determination of the status of the claim of Central Bank of the South (hereinafter referred to as "the Bank"). Hearing in this cause was held on the 14th day of May, 1984.

From the evidence presented and upon consideration of arguments presented in the form of post-hearing briefs submitted by the parties, the Court makes the following findings of fact and conclusions of law. The debtor operated a gift shop known as "De Gevulde Hoorn" from 1977 until March, 1982. Said business was operated as a sole proprietorship. Soon after the gift shop ceased doing business, the debtor began operating another business in a different location and under a different trade name. Said business, which was also a sole proprietorship, operated under the name of "Estina's" and sold principally ladies clothing. During the course of the debtor's operation of these two businesses, the Bank had loaned the debtor money for operating expenses, including the purchase of inventory. The Bank was thereby granted a security interest in the inventory, fixtures and equipment of both the gift shop and Estina's. On or about December 23, 1981, the debtor's husband, Jack Childers,

executed a mortgage to the Bank to guarantee payment of his wife's indebtedness to the Bank. Mr. Childers had no ownership interest in his wife's business. Said mortgage was against Mr. Childers' home, which was owned solely by Mr. Childers. The debtor did not own any interest in said real estate at the time of the mortgage to the Bank. The realty has continued to be owned solely by Mr. Childers as record titleholder.

The debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 6, 1982. Said petition was voluntarily converted to a Chapter 7 proceeding on January 6, 1984. In Schedule B–4 of the Chapter 7 petition, the debtor claimed certain inventory of her business as exempt, placing a value of $3,073.70 on said inventory. Also claimed as exempt was wearing apparel and "tools of the trade" with an unspecified value. The Chapter 7 trustee was authorized to sell the non-exempted inventory, equipment and fixtures of the debtor's business. Said assets were sold by the trustee, whereupon proceeds amounting to $31,000.00 were placed in a 90-day certificate of deposit, pending a determination of the status of the Bank's claim.

At the hearing, the trustee informed the Court that he had reason to believe that the debtor undervalued her claimed exemptions and has been selling the retained inventory for an amount in excess of the listed value. However, the evidence presented to the Court was insufficient to support the trustee's contention, and thus the Court concludes that the necessity of an accounting was not demonstrated.

■ It is further contended by the trustee that the Bank's purported security interest in the inventory, equipment and fixtures of Estina's is unperfected. In support of this position, the trustee argues that the UCC–1 financing statement filed by the Bank is listed under the name of Louisa S. Childers, d/b/a De Gevulde Hoorn rather than under Estina L. Childers, d/b/a Estina's. The trustee asserts that the Bank should have refiled the UCC–1 to reflect the change in names, and that failure to do so was misleading to any creditor checking the Secretary of State's records as to liens against the business' inventory, equipment and fixtures. However, the Court feels that the change of trade name and the differing first name of the debtor is not fatal to the Bank's perfected security interest. The use of the trade name is optional and is merely for the purpose of further indexing. See Section 7–9–402(7) of the Code of Alabama (1975). Furthermore, the "notice" function of the financing statement is not affected by the use of "Louisa" as the debtor's first name on the subject UCC–1. Thus, the Court is of the opinion that the UCC–1 financing statement which perfected the Bank's security interest in the inventory, fixtures and equipment in both of the debtor's businesses is not misleading and is effective pursuant to Section 7–9–402 of the Code of Alabama (1975).

The remaining and most contested issue before the Court concerns the applicability of the concept of marshalling of assets. The trustee contends that the Bank should be required to satisfy its claim against the debtor by virtue of its mortgage against the real estate owned by Mr. Childers, thereby allowing payment of the debtor's general unsecured creditors to be made from the proceeds of the trustee's sale of the debtor's business inventory. The trustee argues that his status as a lien creditor pursuant to 11 U.S.C. § 544 entitles him to compel a marshalling of assets as a junior lienholder.

■ In a general sense, the trustee's position is an arguably accurate statement of the doctrine of the marshalling of assets. Sometimes referred to as the "two funds" doctrine, marshalling of assets is applicable when a debtor has two or more properties which are encumbered in differing degrees, the property against which there are the fewest number of liens is to be resorted to first to satisfy the senior lienholder's claim before looking to property upon which there are junior lienholders. See *In re Computer Room, Inc.*, 24 B.R. 732, 734,

735, 736 (Bkrtcy.N.D.Ala.1982). The "elements" of the doctrine have been stated as: 1) that the creditors are creditors of the same debtor, 2) that there are two funds belonging to that debtor, and 3) that one of the creditors has the right to resort to both funds. *Computer Room* at 734.

■ The case at bar does not represent a typical marshalling of assets situation, since there is actually no junior, or subordinate, secured creditor involved. The "junior lienholder" in this case is the trustee as representative of the general unsecured creditors. In the *Computer Room* case, Judge Wright indicated that although the trustee is a lien creditor under Section 544 of the Bankruptcy Code, the trustee cannot be considered as a junior secured creditor for purposes of marshalling of assets. *Computer Room* at 735, n. 5. Judge Wright also noted the inapplicability of the marshalling of assets doctrine to funds in the hands of a guarantor, since such funds are not owned by a common debtor. *Computer Room* at 735, n. 3.

Some courts have avoided the "common debtor" requirement by ordering the marshalling of assets upon a finding of additional equitable grounds, such as a corporate alter ego or the need to pierce the corporate veil. See *Matter of Multiple Services Industries, Inc.*, 18 B.R. 635, 636, 637 (Bkrtcy.E.D.Wis.1982). It is conceivable that a husband-wife relationship, combined with a showing of a fraudulent purpose, could constitute equitable grounds sufficient to waive the common debtor requirement. However, the cases that have ignored the common debtor requirement have been criticized as being based on a misapplication of the spirit behind the marshalling doctrine. See *In re Ludwig Honold Mfg. Co.*, 33 B.R. 724, 727, 728 (Bkrtcy.E.D.Penn.1983); *In re United Medical Research, Inc.*, 12 B.R. 941, 943, 944 (Bkrtcy.C.D.Cal.1981).

This Court agrees with the reasoning of the line of cases that have held that the requirement of a common debtor is essential to an application of the doctrine of marshalling assets. In the absence of a showing of fraud or some other compelling equitable ground, the Court is of the opinion that if both funds are not in the hands of one debtor, then marshalling is both unwarranted and improper.

The District Court's opinion in *DuPage Lumber & Home Improvement Center Co., Inc. v. Georgia Pacific Corp.*, 34 B.R. 737 (N.D.Ill.1983), appears to this Court to be controlling as to the facts of the case at bar. The *DuPage* court noted that the marshalling of assets doctrine

... embodies and implements a judgment as to the proper distribution of one debtor's assets, as among a senior mortgagee, a junior mortgagee, and the debtor's general creditors. When guarantors and other debtors are added to the picture, then new questions arise. The marshalling doctrine simply does not purport to provide a rule for deciding whether a junior mortgagee can require the senior mortgagee to satisfy its claim out of the assets of a second debtor. *DuPage* at 740, 741

Clearly, Mr. Childers, as guarantor of his wife's indebtedness to the Bank, is a "second debtor" with funds (the subject real estate) not in the hands of the debtor, Mrs. Childers. Thus, the doctrine of marshalling of assets is inapplicable in the case before the Court. The Bank cannot be compelled by the trustee to first look to the real estate of Mr. Childers to satisfy its claim before receiving any distribution from the proceeds of the sale of the debtor's business equipment, inventory and fixtures, upon which the Bank held a perfected security interest.

It is therefore ORDERED, ADJUDGED AND DECREED that the relief sought by the trustee, to-wit: an accounting of the personal property claimed as exempt by the debtor, a determination that the security interest of Central Bank of the South is unperfected, and to compel a marshalling of assets as to Central Bank of the South, be and hereby is denied.

It is further ORDERED, ADJUDGED AND DECREED that Central Bank of the South holds a perfected security interest in

the inventory, fixtures and equipment of the debtor's business and in the proceeds derived therefrom to the extent of the indebtedness owed said secured creditor.