### In the Matter of FRANCHISE SYSTEMS, INC., Debtor.

### Jay E. LOEB, Trustee for the Estate of Franchise Systems, Inc., Plaintiff,

### v.

### FRANCHISE DISTRIBUTORS, INC., Trust Company Bank, f/d/b/a Peachtree Bank and Trust Company, Georgia Bank & Trust Co., and Western Automation Corporation, and Industrial Boiler Co., Inc., Defendants.

### Bankruptcy No. 83–05523A–ADK. Adv. No. 84–0170A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 7, 1985.

Jay E. Loeb, Atlanta, Ga., for plaintiff.

Stephen H. Block, Atlanta, Ga., Jerome Kaplan, Ward Stone, Macon Ga., for Georgia Bank & Trust Co.

## MEMORANDUM OF OPINION AND ORDER

A.D. KAHN, Bankruptcy Judge.

Plaintiff-Trustee filed the above-styled adversary complaint to determine the extent and priority of liens, to set aside a judgment lien as a preferential transfer, and to request the marshaling of certain assets. It is before the Court on cross-motions for partial summary judgment filed by Plaintiff-Trustee and Defendant Georgia Bank & Trust Company [hereinafter referred to as "Georgia Bank"]. Also before the Court is a "Motion in Support of Georgia Bank and Trust Company's Motion for Partial Summary Judgment" filed by Charles and Margaret Armstrong. Because the Armstrongs will be directly affected by the outcome of this portion of the instant complaint, the Court shall grant said motion and consider the brief they have filed.

### I.

Plaintiff-Trustee and Georgia Bank have entered into the following Stipulation of Facts:

#### 1.

On or about October 27, 1981 Charles and Margaret Armstrong executed a loan note and security agreement in favor of Georgia Bank & Trust Co. to pay for certain dry cleaning equipment purchased from Franchise Distributors, Inc. The Georgia Bank & Trust Co. ("Georgia Bank") perfected its security interest on the Armstrong loan by filing a financing statement in the Superior Court of Bibb County.

**2.**

The Georgia Bank is holding a certificate of deposit in favor of the Armstrongs in the principal sum of $27,250 as additional collateral for the Armstrongs' loan note of October 27, 1981 held by the Georgia Bank.

**3.** ·

On August 13, 1982, the Armstrongs sold all equipment and leasehold rights to the dry cleaner in Macon, Georgia to Franchise Systems, Inc. [the Debtor herein] subject to the security interest ·held by Georgia Bank.

**4.**

Georgia Bank did not file any other financing statement covering this collateral.

**5.**

Georgia Bank has filed a secured claim in this Estate [the estate of Franchise Systems, Inc.] for $63,811.00, plus interest.

**6.**

The Armstrongs have never been officers, shareholders or directors in Franchise Distributors, Inc. or Franchise Systems, Inc.

**7.**

The equipment ... has not been moved since the creation of the security interest in favor of Georgia Bank, and the business, both before and after the sale referred to in Stipulation No. 3, has continued in operation under the trade style of "One Hour Martinizing", at the same location in Macon, Bibb County, Georgia.

In addition to the above stipulated facts, the Court finds that the following facts are also undisputed.

The Armstrongs financed the equipment in question by borrowing $80,252.00 from Georgia Bank. Georgia Bank took a security interest in the equipment. The Security Agreement provided, *inter alia*, that "[t]he undersigned hereby warrants and agrees

that: ... (5) it will not sell, transfer, lease, abandon or otherwise dispose of any of the Goods or any interest therein except with the prior written consent of the Secured Party; ...." Stipulation of Facts, Exhibit "B" attached to Exhibit 1.

On August 13, 1982, the Armstrongs sold the dry cleaning business, including the equipment in question, to the Debtor. On the same day, the Armstrongs, the Debtor, and Georgia Bank entered into an agreement which provided, in part, that

**2.**

Bank hereby consents to the sale of the Equipment from the Armstrongs to Franchise [the Debtor] and agrees that such sale will not be a breach or default of said Note or Security Agreement and shall not cause any acceleration thereof.

**3.**

The parties hereto agree that Franchise is purchasing the equipment only "subject to" the debt and is not assuming the debt. The Bank shall continue to have a security interest in the Equipment, until the Debt is satisfied and paid in full. Further, until the indebtedness to the Bank is paid in full, the Bank shall continue to have a lien and a security interest in the Certificate of Deposit Number 22381 in the amount of $27,350.00 currently held by the Bank.

    . . . .

**7.**

The Note and Security Agreement, except as modified herein, shall remain in full force and effect. The Note, Security Agreement and this Agreement, in the aggregate, contain the entire agreement between the parties on the subject matter hereof, and may not be further modified except in writing.

Stipulation of Facts, Exhibit 1 at 2–4.

**II.**

The instant cross-motions for partial summary judgment present the following issues: a) whether Georgia Bank's security

interest in the equipment in question terminated pursuant to O.C.G.A. § 11–9–306 when it consented to the sale of the equipment to the Debtor; and b) whether Georgia Bank is required to reduce its secured claim against the Estate by the amount of the certificate of deposit it holds on funds posted by the Armstrongs.

### A.

Plaintiff-Trustee contends that Georgia Bank's security interest terminated on August 13, 1982, when it consented to the sale of the equipment, notwithstanding the fact that the sale was made "subject to" Georgia Bank's security interest. Plaintiff-Trustee relies on O.C.G.A. § 11–9–306(2) which provides that

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof *unless the disposition was authorized by the secured party in the security agreement or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor.

(emphasis added).

Plaintiff further argues that, because § 11–9–306(2) does not modify "authorized" in any way, a secured party may not give conditional authorization of the transfer of collateral. Plaintiff-Trustee's Brief in Support of Partial Summary Judgment at 8; Plaintiff-Trustee's Reply to Defendant's Motion for Summary Judgment at 2–3. *See also Western Idaho Prod. Credit Ass'n. v. Simplot Fee Lots, Inc.,* 106 Idaho 260, 678 P.2d 52, 37 U.C.C.Rep.Serv. 1748 (Idaho 1984).

Georgia Bank, on the other hand, maintains that O.C.G.A. § 11–9–306(2) "releases security interests in collateral only where the secured party authorizes a sale of its collateral *free and clear of its security interest.*" Brief of the Georgia Bank & Trust Company in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment at 5 (emphasis supplied). In support of this contention, it relies in part on

two cases. In the first case, with facts directly on point with the case *sub judice,* the Court in *Matto's, Inc. v. Olde Colonie Place (In re Matto's, Inc.),* 8 B.R. 485 (Bankr.E.D.Mich.1981) held that where a secured party agrees to the transfer of the collateral to a third party *subject to* the security interest, that security interest remains in effect. In the second case, *Central Cal. Equip. Co. v. Dolk Tractor Co.,* 78 Cal.App.3d 855, 144 Cal.Rptr. 367, 23 U.C.C. 1051, 1056 (1978), the Court held that

when a security agreement expressly prohibits the disposition of collateral without the written consent of the secured party, in order for a court to find an authorization permitting disposition free of the security interest within the meaning of § 9306, subdivision (2) [U.C.C. § 9–306(2) ], there must either be actual prior or subsequent consent in writing by the secured creditor *manifesting a purpose to authorize the disposition free of the security interest.*

(emphasis added).

Georgia Bank also relies upon O.C.G.A. § 11–9–402(7) which provides that

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names or partners. Where the debtor so changes his name, or in the case of an organization, its name, identity, or corporate structure, that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. *A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.*

(emphasis added). In addition, Georgia Bank points to Official Comment No. 8 to U.C.C. § 9–402(7) of the National Confer-

ence of Commissioners on Uniform State Laws (1972) which states that

> Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

On its face, O.C.G.A. § 11–9–402(7) appears to directly conflict with O.C.G.A. § 11–9–306(2). At least one court has considered the conflict between these two provisions of the Uniform Commercial Code. In the case of *In re Matto's, Inc., supra,* the Court held that

> To effect a reconciliation of section 9–402(7) with section 306(2), particularly in cases where the security agreement prohibits the debtor from transferring the encumbered collateral without the written consent of the secured creditor, the term, "otherwise," is not satisfied by any form of consent which does not clearly and unambiguously authorize disposition of the collateral free of the security interest.

8 B.R. at 489. While the Court concurs with Plaintiff-Trustee's position that § 11–9–402(7) deals solely with the question of when a new financing statement is required and not the issue of whether the security interest itself continues after a transfer has been made, some reconciliation of the language is necessary. This Court is pursuaded by the reasoning of the Court in *In re Matto's, Inc.,* and will follow its holding.

■ Where is it clear that all parties to an agreement intend for the transfer of collateral to be subject to a security interest that security interest remains in effect, and no new financing statement is required pursuant to § 11–9–402(7). It is evident from the undisputed facts that Georgia Bank, the Armstrongs, *and the Debtor* agreed that Georgia Bank would "continue to have a security interest in the Equipment, until the Debt is satisfied and paid in full." Stipulation of Facts, Exhibit 1, ¶ 3. Therefore, it is the finding of the Court that Georgia Bank's perfected security interest was *not* terminated when it consented to the sale of the equipment to the Debtor subject to its security interest. The Court now turns to the second issue regarding the marshaling of assets.

### B.

Georgia Bank has filed a secured claim against the estate of the Debtor for $63,811.00, plus interest. The claim is secured by the equipment in question (see above) and a certificate of deposit in the amount of $27,250.00 posted by the Armstrongs. Plaintiff-Trustee contends that this Court should order that Georgia Bank look first to the certificate of deposit for satisfaction of its claim before proceeding against the proceeds from the sale of the equipment under the equitable doctrine of marshaling of assets.

■ "The equitable doctrine of marshalling [sic] rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Sowell v. Federal Reserve Bank,* 268 U.S. 449, 456–457, 45 S.Ct. 528, 530, 69 L.Ed. 1041 (1925). Before a court will apply the doctrine of marshaling, three elements must exist. These are: 1) two or more creditors of the same debtor; 2) two funds belonging to that debtor; and 3) one of the creditors alone has the right to resort to both funds. *Peoples Bank v. Computer Room, Inc. (In re Computer Room, Inc.),* 24 B.R. 732 (N.D.Ala.1982). *See also Duck v. Wells Fargo Bank (In re Spectra Prism Indus., Inc.),* 28 B.R. 397 (Bankr. 9th Cir. 1983); *United States v. Friend (In re A.E.I. Corp.),* 11 B.R. 97 (Bankr.E.D.Pa. 1981).

In the case *sub judice*, the two funds involved do not belong to the same debtor. The proceeds from the sale of the equipment are a part of the Debtor's estate and the certificate of deposit belongs to the Armstrongs. The Debtor has no connection with the certificate of deposit. Plaintiff-Trustee, however, maintains that equitable principles should override the requirement of "two funds."

> [I]t is probable that the junior secured creditors of the Debtor's Estate and unsecured creditors of the Debtor will receive nothing from the equipment sales proceeds, if the position of Georgia Bank is upheld by this Court. The Trustee's contention would promote the policies of the Bankruptcy Court and general policies of equity, while not harming the Georgia Bank one penny.

Plaintiff-Trustee's Reply to Defendant's Motion for Summary Judgment at 4. Plaintiff-Trustee has been unable to cite to the Court any case authority in which the doctrine of marshaling has been applied where the requirement of "two funds" has not been met. There is a line of cases which hold that the "two funds" requirement may be disregarded "where independent and separate equities exist." *In re Rich Supply House, Inc.*, 43 B.R. 68, 70 (Bankr.N.D.Ill.1984). These cases hold that the corporate veil may be pierced in order to marshal the assets of a guarantor if, for example, there has been fraud or inequitable conduct on the part of the corporate debtor or guarantor. *See, e.g., DuPage Lumber and Home Improvement Center Co., Inc. v. Georgia-Pacific Corp. (In re DuPage Lumber and Home Improvement Center Co., Inc.)*, 34 B.R. 737 (N.D.Ill.1983); *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437 (Bankr.N.D. Fla.1980). Plaintiff-Trustee does not assert that there are facts which amount to fraud or inequitable conduct by any entity in the case *sub judice*. Therefore, because the requirement of "two funds" has not been satisfied, the Court will not order marshaling. *See In re Childers*, 44 B.R. 23 (Bankr.N.D.Ala.1984).

Plaintiff-Trustee also relies on O.C.G.A. § 18–2–2, which provides that "[a]s among themselves, creditors shall so prosecute their own rights as not to jeopardize unnecessarily the rights of others; hence, a creditor having a lien on *two funds of the debtor*, equally accessible to him, will be compelled to pursue the one on which other creditors have no lien." (emphasis added). By its own terms, this statutory provision does not apply to the case *sub judice*; Georgia Bank does *not* have a lien on "two funds of the debtor."

Plaintiff-Trustee argues that O.C.G.A. § 18–2–2 is not limited by the "two funds" requirement. For this he relies on the case of *Richardson v. Conn*, 100 Ga. 39, 27 S.E. 978 (1896) in which the Supreme Court of Georgia held that a creditor who had a lien against the funds of two separate entities could be compelled to satisfy its lien out of the funds in which the other creditor had no lien. This case seems to have been overruled by the case of *Love v. Goodson*, 150 Ga. 46, 102 S.E. 429 (1920) in which the Supreme Court of Georgia stated the following:

> Equity will not, where one creditor holds a claim against two, and another holds a claim against one of those two, compel the former to proceed against that one of his joint debtors against whom the latter has no claim, in order that the funds of his debtor may be applied exclusively to the payment of his claim. Equity will never do this for the sake of the creditor who has a single claim, but will do it when it is equitable as between the two debtors that it should be done. *Newsom v. McLendon*, 6 Ga. 392, 400; *Hanesley v. National Park Bank*, 147 Ga. 96 (92 S.E. 879); Ex Parte Kendall, 17 Vesey, 520; 2 Story's Eq.Jur. (14th ed.) § 864 et seq. If anything said in the opinion in *Richardson v. Conn*, 100 Ga. 39 (27 S.E. 978), conflicts with the ruling above announced, it must yield to the older decision by this court.

150 Ga. at 47, 102 S.E. 429. The Court finds that neither O.C.G.A. § 18–2–2 nor equity compel or require that the doctrine

**164**

of marshaling be imposed in the case *sub judice.*

### ORDER

In accordance with the reasoning above, it is the Order of the Court that Plaintiff-Trustee's Motion for Partial Summary Judgment be, and the same hereby is, DENIED. It is further Ordered that Georgia Bank & Trust Company's Motion for Partial Summary Judgment be, and the same hereby is, GRANTED.