**In re HODGE FOREST INDUSTRIES, INC., Debtor.**

**TRUSTEE SERVICES CORPORATION, Plaintiff,**

v.

**EAST RIVER LUMBER CO., INC., Defendant.**

**Adv. No. 85–0191.**

United States Bankruptcy Court, D. Idaho.

April 15, 1986.

James S. Underwood, Jr., Boise, Idaho, for plaintiff.

William Appleton, Coeur d'Alene, Idaho, for defendant.

ALFRED C. HAGAN, Bankruptcy Judge.

Plaintiff, Trustee Services Corporation, the trustee appointed in the Hodge Forest Industries, Inc. Chapter 7 bankruptcy case, seeks in this adversary proceeding to avoid East River Lumber Co., Inc.'s perfected security interest in a lease of premises, and in equipment and inventory necessary to operate a sawmill which are part of the estate. Trustee Services argues that, pursuant to I.C. § 28–9–306(2), East River's security interest lapsed upon the authorized transfer of this property from the McGuckins, who purchased the property from East River, to Idawood, Inc. East River asserts that its security interest is still valid pursuant to I.C. § 28–9–402(7).

A lease of real property would appear to be excluded from the scope of Title 28, Chapter 9 of the Idaho Code, Article 9 of the Uniform Commercial Code, by I.C. § 28–9–102. *See* Official Comment to I.C. § 28–9–102, ¶ 4. Therefore, East River could not have a perfected security interest in the lease. *Assuming* that a lease is *not* excluded from the scope of Article 9, this analysis would apply to a security interest in it also.

The McGuckins executed a security agreement giving East River a security interest in the lease and in the goods which they purchased by contract. One month

after the execution of this sale contract and security agreement, East River and the McGuckins executed an "Amendment to Contract of Sale." In that amendment, East River specifically consented to the assignment of McGuckin's interest to Idawood, Inc. and imposed two conditions, neither of which concerned Idawood executing a security agreement and financing statement.

The McGuckins then formed Idawood, Inc. in which Michael McGuckin and James Hodge were the sole shareholders. The minutes of the organizational meeting of the directors of Idawood provide that

[t]he president presented to the meeting proposed Assignment of Contract of Sale, which transfers the interest of Michael McGuckin and Joann McGuckin, husband and wife, as buyers of a lumber mill in Bonner County, Idaho, to the corporation, and requiring the corporation to undertake and perform the obligations of McGuckins as set forth in the contract. On motion duly made and seconded, it was unanimously

RESOLVED that the officers of the corporation are hereby authorized to execute the Assignment of Contract of Sale on behalf of the corporation and the contract shall be filed with these minutes.

There is no written assignment of Contract of Sale in the record.

Subsequently, Idawood became insolvent. Idawood agreed to a bulk transfer of assets to Hodge Lumber. A notice to creditors of the bulk transfer provided that

[m]ost of the debts of Idawood, Inc. as of August 31, 1983, have been paid by the Buyer. Any additional bills may be sent to the Buyer at the address stated above.

The property sold consists of the inventory, accounts receivable, prepaids, and contract rights to the purchase of the mill from East River Lumber Company, Inc., and the equipment and leasehold improvements, all of which are located at Kootenai, Bonner County, Idaho.

The estimated total of the debts of the Seller is $895,000.00. Consideration for the sale is the assumption and payment of debts in this amount by the Buyer. No cash or other consideration is passing to the Seller.

The address where the Schedule of Property and List of Creditors may be inspected and copied by any creditor of the Seller, at all reasonable hours, is: 4800 Production Drive, Boise, Idaho.

Pursuant to the transfer, most, but possibly not all, of the existing debts of the Seller will be paid.

This notice is being delivered personally or sent by registered or certified mail to all the persons shown on the List of Creditors furnished by the Seller to the Buyer, and to all other persons who are known to the purchaser to hold or assert claims against the Seller.

There is no evidence in the record to show that East River was on the list of creditors. For purposes of this decision, I will assume that East River did not receive the notice to creditors of the bulk sale from Idawood to Hodge Lumber. I will also assume that Idawood did execute an Assignment of Contract which required it "to undertake and perform the obligations of McGuckins" as set forth in the Contract of Sale between East River and the McGuckins.

Idaho Code § 28-9-306(2) provides

Except where this chapter otherwise provides, a security interest *continues* in collateral notwithstanding sale, exchange or other disposition thereof *unless* the disposition was *authorized* by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

[Emphasis added.] Section 28-9-306 is entitled " 'Proceeds'—Secured party's rights on disposition of collateral."

The Official Comment to I.C. § 28-9-306 provides:

3. In most cases when a debtor makes an *unauthorized* disposition of collateral, the security interest, under

prior law and under this Article, *continues* in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may claim both proceeds and collateral, but may of course have only one satisfaction.

In many cases a purchaser or other transferee of collateral will take free of a security interest: in such cases the secured party's only right will be to proceeds. *The transferee will take free whenever the disposition was authorized;* the authorization may be contained in the security agreement or otherwise given. The right to proceeds, either under the rules of this section or under specific mention thereof in a security agreement or financing statement does not in itself constitute an authorization of sale.

[Emphasis added.]

In a similar situation, the Idaho Supreme Court held that a secured party's perfected security interest lapsed when the collateral was sold with the secured party's consent. *Western Idaho Production Credit Association v. Simplot*, 106 Idaho 260, 678 P.2d 52 (1984). That Court did not consider the effect of I.C. § 28–9–402(7).

Idaho Code § 28–9–402(7) provides:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four (4) months after the change, unless a new appropriate financing statement is filed before the expiration of that time.

A filed financing statement *remains effective* with respect to collateral transferred by the debtor even though the secured party knows of or *consents* to the transfer.

[Emphasis added.] The Official Comment to that section provides in part:

8. Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

In *Matter of Franchise Systems, Inc.*, 46 B.R. 158 (Bankr.N.D.Georgia 1985), the court held that

[w]here is it [sic] clear that all parties to an agreement intend for the transfer of collateral to be subject to a security interest that security interest remains in effect, and no new financing statement is required pursuant to [UCC § 9–402(7)].

46 B.R. at 162. Other courts have reconciled § 9–306(2) and § 9–402(7) by holding that authorization of the disposition of collateral under § 9–306(2) means the clear and unambiguous authorization to dispose of collateral *free and clear* of the existing security interest. *See Matter of Matto's, Inc.*, 8 B.R. 485, 489 (Bankr.E.D.Michigan 1981) *and cases cited therein in footnote 3*, 8 B.R. at 489.

However, I believe that this analysis overlooks the purpose served by filing a financing statement—giving constructive notice to the public of a lender's interests in collateral. Whether the parties intend for a security interest in collateral to continue after the collateral is transferred to another entity is not at issue. The question is whether a secured party should be required to have a transferee of collateral execute a security agreement and financing statement, if its security interest in the

collateral is to continue, or whether creditors should be required to search for prior security interests in the name of the present owner and all past owners of collateral. A lender who later loans money to the transferee and takes a security interest in the collateral is at substantially greater risk if a creditor of a previous owner of the transferee retains a prior perfected security interest in the collateral by virtue of a financing statement in the name of a previous owner of the collateral.

I conclude that consent to the disposition terminated East River's perfected security interest in the collateral. As to the transfer from McGuckin to Idawood, Inc., East River could have conditioned its consent to the transfer upon the simultaneous execution of a security agreement and financing statement by Idawood in favor of East River, and foreclosed if Idawood did not comply with that condition. Allowing East River's perfected security interest to continue after the transfer of equipment and inventory from McGuckin to Idawood and then to Hodge Lumber, would give East River a secret lien which later financiers would be hard-pressed to discover. Article 9 of the Uniform Commercial Code is designed to prevent the use of secret liens. Requiring later financiers to search for perfected security interests in the names of previous owners of collateral would impede exchange in the market place. It would also reward secured parties who failed to file a financing statement in the new owner's name by giving them the benefit of financing provided by later, unwary financiers, whose interest would have a lower priority, and thus reward deception.

As other courts have implicitly shown or explicitly stated, reconciliation of § 28–9–306(2) and § 28–9–402(7) is difficult. However, given the Code's purpose of promoting exchange and giving little effect to secret liens, and notwithstanding paragraph 8 of the Official Comment to § 28–9–402(7), I will give effect to § 28–9–306(2). *But see In re Southern Properties, Inc.,* 44 B.R. 838 (Bankr.E.D.Virginia 1984).

I conclude that the security interest of East River terminated when the McGuckins transferred the collateral to Idawood. This decision shall constitute findings of fact and conclusions of law. Counsel for the trustee shall prepare a proposed judgment in accordance with this decision.