In re LUBY, Hugh D., Debtor.

Bankruptcy No. 687–06938–R7.

United States Bankruptcy Court, D. Oregon.

July 11, 1988.

Kathryn Tassinari, Eugene, Or., for debtor.

James P. Caher, Eugene, Or., for trustee.

Martha J. Rodman, Eugene, Or., for creditor.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court on the debtor's motion to invalidate the judicial lien of Nike, Inc. (Nike) on the debtor's residence located at 4533 Corona St., Eugene, Oregon (the home). A hearing was held on November 4, 1987, where the court heard testimony, the argument of counsel and established a post-hearing briefing schedule. The parties' briefs have been submitted.

### FACTUAL BACKGROUND

Debtor filed his petition for relief under Chapter 7 herein on May 6, 1987. According to his schedules, the fair market value of the home is $70,000. There are three liens on the home. In order of priority, they are: 1) Old Stone Mortgage Company, a mortgage for $30,000; 2) Small Business Administration (SBA), a mortgage for $111,000 and 3) Nike's judgment lien in the sum of $48,500. Debtor owns the home jointly with his wife, Donna Luby. Nike's judgment is against Luby's Inc., a corporation (the corporation) and the debtor individually. Nike does not have a judgment against the debtor's wife.

The SBA's lien also attaches to a commercial building located at 79 West Broadway, Eugene, Oregon (the building). The ownership and encumbrance history of the building is as follows:

1. In 1974, the corporation owned the building. In that year it borrowed $140,-000 from the SBA and gave as security for the loan, a mortgage on the building. This loan was also personally guaranteed by debtor and his wife. They pledged the home as additional security for the SBA loan. This loan is not in default. The scheduled amount owing is $111,000.

2. In 1978, the corporation conveyed the building to debtor and his wife. They assumed the SBA obligation.

3. On November 29, 1984, debtor and his wife borrowed $53,000 from Citizens Financial Services (Citizens) and gave Citizens a trust deed, on the building, as security.

4. On December 15, 1984, the corporation borrowed $41,200 from debtor's father-in-law, Everett Reynolds (Reynolds). On February 25, 1986, as security for this loan, debtor and his wife gave Everett Reynolds a mortgage on the building. The mortgage was recorded that same date.

5. On February 11, 1986, the corporation borrowed $50,000 from debtor's parents, Hugh and Frances Luby (the Lubys). As security for this loan, debtor and his wife gave the Lubys a mortgage on the building on February 18, 1986 which was recorded February 25, 1986.

6. On March 1, 1986, debtor conveyed, by bargain and sale deed, his interest in the building to his wife in return for a stated consideration of $280,000 which included her promise to pay, indemnify, and hold debtor harmless from any further responsibility on the obligations to the SBA, Citizens, Reynolds, the Lubys and all obligations of the debtor as a landlord. This deed was recorded March 17, 1986.

7. In August, 1987, the trustee, Gordon York, Inc. initiated an adversary proceeding to set aside, as fraudulent transfers, the mortgages to Reynolds, the Lubys, and debtor's transfer of his interest in the building to his wife. On February 1, 1988, the trustee noticed its intent to compromise any and all claims against Reynolds, the Lubys and debtor's wife for $30,000 before any determination on the merits. No objections to the proposed settlement were filed.

At the hearing on the present motion, Nike's appraiser, H. Stuart Berge, testified that the building's value is somewhere between $300,000 and $320,000 assuming a three to four month marketing period. Debtor conceded that the building's value is at least $200,000.

McKenzie Outfitter's, Inc. is the building's current tenant.

At the lien avoidance hearing, debtor's counsel, Kathryn Tassinari, testified that at the first meeting of creditors, debtor's wife testified that the consideration she paid for her husband's interest in the building was her signature for a loan. She and the debtor gave mortgages to Reynolds and the Lubys because the original security for those loans was inadequate.

Debtor's wife, Donna Luby, is not in bankruptcy.

## DISCUSSION

All statutory referenced are to the Bankruptcy Code Title 11 U.S.C. unless otherwise indicated. Debtor seeks to invalidate all of Nike's lien under § 522(f)(1). That section provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on *an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection* (b) of this section, if such lien is—

(1) a judicial lien; (emphasis added)

Nike contends that the debtor's attempt to use § 522(f)(1) in this case is not appropriate. Section 522(f)(1) allows a debtor to avoid the judicial lien only to the extent that such lien impairs an exemption to which the debtor would otherwise have been entitled. If the consensual liens (which may not be avoided under § 522(f)(1)) exceed the value of the property then the debtor would have no exemption. The Nike lien does not, therefore, impair an exemption to which the debtor would otherwise have been entitled. In the alternative, the debtor has no interest in the home and therefore Nike's judicial lien does not attach to an interest of the debtor in the property. Nike cites many cases in support of its position.

■ The debtor maintains that even though the consensual liens, in this case, exceed the value of the home, that he can still use § 522(f)(1) to avoid the judicial lien

of Nike. The debtor likewise cites authority to support his position.

In this district, it has been settled that where consensual liens on property exceed its market value, the debtor cannot avail himself of § 522(f)(1) judicial lien avoidance. *In re Akers*, Case No. 682–07626(a) (Bankr.D.Or., June 12, 1985) (Wilhardt, J.) (unpublished op.).

■ In such circumstances, however, the debtor may have recourse to §§ 506(a) and (d). These statutes provide in part as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less that the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest ...

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless ...

This court has held that a Chapter 7 debtor may use §§ 506(a) and (d) to avoid the under secured or unsecured portion of any lien on the debtor's real property. *In re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987).

While debtor's motion has been pled and argued under § 522(f)(1), this court notes that the material issues, i.e. the home's value and the nature and extent of the liens against it, would be the same if the debtor had moved for lien avoidance pursuant to §§ 506(a) & (d). Therefore, in the interest of judicial economy, the court is prepared to treat debtor's motion as one under §§ 506(a) and (d).

Here, the liens prior to Nike's attach to the entire value of the home. Nike, however, urges this court to use the doctrine of marshaling and ignore SBA's second lien on the home. Nike argues that the SBA could be fully satisfied by foreclosing its lien on the building and that such foreclosure would, in all probability, take place before it foreclosed on the home. The debtor argues that marshaling is inappropriate because SBA is not a party to this motion and that in any case, the principles of marshaling do not apply to the operative facts presented here.

Sections 506(a) and (d), in effect, give secured creditors what they would be entitled to under a forced sale of the secured property outside of bankruptcy. *O'Leary, supra.* Thus, the question becomes whether Nike would be entitled to a marshaling order outside of bankruptcy.

The Oregon Supreme Court has addressed the equitable doctrine of marshaling as follows:

We note it to be a basic principle of equity that where a senior creditor has recourse to two funds and a junior creditor has recourse to but one of them, the senior creditor must seek to satisfy itself first out of the fund in which the junior creditor has no interest. *Community Bank v. Jones*, 278 Or. 647, 678, 566 P.2d, 470, 488 (1977).

"A bankruptcy court can invoke the doctrine of marshaling since it applies equitable principals." *Victor Gruen, Associates, Inc. v. Glass*, 338 F.2d, 826, 829 (9th Cir.1964).

■ Here, this court is without power to enter a marshaling order since a number of essential parties to such a determination have not been included in the debtor's motion. These include the SBA as well as the other creditors who hold liens secured by the building. In addition, Nike has not sought to involve those creditors in the determination of this motion. Accordingly, it would be a denial of due process for this court to enter a marshaling order affecting the rights of SBA or the junior lien holders on the building. *In re, Coors of North*

*Mississippi, Inc.*, 66 B.R. 845 (Bankr.N.D. Miss.1986).

■ Nike concedes that this court may not enter a marshaling order in connection with debtor's motion that would be binding upon the SBA or any other lien holder, however, Nike urges this court to apply marshaling principles as a defense to the debtor's lien avoidance motion. Nike would have this court disregard the SBA lien on the home.

Accordingly, Nike's computations are as follows. The value of the home is $70,000, subtracting the Old Stone Mortgage Company mortgage of $30,000 leaves a balance of $40,000. Under Nike's scenario, the debtor does have exemption rights in the property and can avail himself of § 522(f)(1) lien avoidance to the full amount of his homestead exemption under Oregon law, $15,000. This leaves a balance of $25,000 that can be applied to Nike's judgment lien. Nike concedes that its judgment lien should be avoided to the extent it exceeds $25,000.

Nike has cited no authority (and this court has found none) allowing the use of marshaling principles in the manner suggested by Nike. *See, In re Cook*, 67 B.R. 240 (Bankr.D.Minn.1986) (O'Brien, J.) where marshaling was asserted as a defense to lien avoidance but the case was decided on other grounds. This court declines to accept Nike's invitation to apply marshaling principles where a marshaling order would clearly not be appropriate.

■ In the alternative, if this court were to consider Nike's marshaling defense on the merits this court would find, for the reasons set forth below, that such a defense is not applicable to the case at bar.

■ Marshaling, as stated above, is founded upon equitable principles and is most often raised by a junior lien holder as a defense to foreclosure or other collection actions taken by a senior lien holder. Used in that context and as Nike asserts here, it is in the nature of an affirmative defense and Nike would have the burden of proving the essential elements giving rise to the doctrine.

In order for any marshaling order to issue, it must appear that:

1. There are at least two creditors of the same debtor;

2. There are two funds that belong to that same debtor (common debtor requirement);

3. The senior creditor alone has a right to resort to both funds to satisfy its claim; and

4. Neither the senior creditor nor any third party will be prejudiced by the marshaling order.

*In re Cohan Court and Sport, Inc.*, # 382–00079 (Bankr.D.Or., Feb. 15, 1983) (Johnson, J.) (unpublished op.), *In re Multiple Services Industries, Inc.*, 18 B.R. 635 (Bankr.E.D.Wis.1982); *In re Oransky*, 75 B.R. 541 (Bankr.E.D.Mo.1987); *Victor Gruen Associates, Inc. v. Glass, supra.*

Here, since SBA and Nike both have claims against the debtor, the first requirement for marshaling is clearly met.

The analysis breaks down however, when we turn to the second requirement, the common debtor requirement. The building is owned soley by Donna Luby, the wife of the debtor. The debtor has retained no ownership interest therein.

Nike contends, however, that the "common debtor" requirement is satisfied on several grounds.

■ First, Nike argues that at the time the SBA and Nike indebtedness were incurred, the debtor owned the building. The operative time, however, for applying the "common debtor" requirement is when marshaling is requested, not when the original debts were incurred. The two properties must be in the "hands of the debtor" at the time the marshaling proceeding is commenced. *In re Childers*, 44 B.R. 23, 26 (Bankr.N.D.Ala.1984).

■ Next, Nike contends that the debtor should be deemed an owner because of his inchoate marital rights in the property. This argument is without merit. The old common law doctrine that a husband and wife are to be regarded as one entity has long since been discarded in modern juris-

prudence. See O.R.S. 108.010 et seq. Dower and curtesy have been abolished, by statute, in Oregon. O.R.S. 112.685. The fact that the debtor might be able to claim some interest in the building in a dissolution of marriage proceeding (if such a proceeding were ever to occur) or that the debtor might have some rights to the building in a probate or other death related proceeding (assuming he survives his wife) does not give him any present ownership rights in the property. It is clear that Donna Luby, as the owner of the building, could convey the building or further encumber the building without the consent or any other action by the debtor.

■ Finally, Nike argues that this court should recognize an exception to the "common debtor" requirement based upon fraud or other inequitable conduct committed by the debtor, his wife, Reynolds and the Lubys. Nike relies on *In re Tampa Chain Co., Inc.*, 53 B.R. 772 (Bankr.S.D.N.Y.1985). There, the court ordered a secured creditor to satisfy its lien first from the collateral pledged by a shareholder of the corporate debtor, finding that the shareholder, vis-a-vis the corporation, had engaged in inequitable conduct and fraud. Other courts have looked beyond corporate debtors to their shareholders' assets when piercing the corporate veil was appropriate, *Farmers and Merchants Bank v. Gibson,* 7 B.R. 437 (Bankr.N.D.Fla.1980) and *Multiple Services Industries, supra.* or when the shareholders' personal guarantees of corporate debts were deemed as contributions to the corporation's capital. *In re Whirlpool Corporation, et al v. Plad, Inc., et al, In re Plad, Inc.*, 24 B.R. 676 (Bankr. M.D.Tenn.1982).

The transfer that would be material to the common debtor requirement would have to be the debtor's conveyance in March, 1986 of his ownership interest in the building to his wife. Assuming, without deciding, that fraudulent or inequitable conduct of the debtor and his wife would justify an exception to the common debtor requirement, Nike must prove the fraud or inequitable conduct by clear and convincing evidence. *In re Plad, Inc., supra., In re Works, Inc.*, 82 B.R. 258 (Bankr.D.Vt.1987).

O.R.S. 95.230 and 95.240 define "fraudulent transfers" under the Uniform Fraudulent Transfer Act as adopted by Oregon. Those sections provide as follows:

**95.230 Transfers fraudulent as to present and future creditors.** (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

(2) In determining actual intent under paragraph (a) of subsection (1) of this section, consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider;

(b) The debtor had retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

(e) The transfer was of substantially all of the debtor's assets;

(f) The debtor had absconded;

(g) The debtor had removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset

transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer had occured shortly before or shortly after a substantial debt was incurred; and

(k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

**95.240 Transfers fraudulent as to present creditors.** (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Nike claims that various badges of fraud as outlined in O.R.S. 95.230(2) are present here such as: 1) the transfer lacked adequate consideration; 2) the transfer was to an insider; 3) the transfer was to a spouse, the debtor continued to own and enjoy the building's benefits which is tantamont to debtor's retention of possession or control; and 4) the debtor was in "perilous" financial condition when the transfer was made.

The record, however, only firmly discloses one of these badges, that is, that the transfer was made to an insider. As to the other badges of fraud, the record is either scant or entirely lacking in proof.

The evidence as to perhaps the most material factor, that is, the adequacy of consideration, indicates that debtor's transfer to his wife was for a stated consideration of $280,000, comprised of her assumption of the prior secured debt and her agreement to hold the debtor harmless from the same as well as lease obligations. Generally, an assumption of liabilities, even from an insolvent debtor, is valid consideration. *Jolly v. Kyle*, 27 Or. 95, 39 P. 999 (1895); *Savage v. Scroggin*, 83 Or. 51, 162 P. 1061 (1917). Ms Tassinari testified that debtor's wife testified at the first meeting of creditors that the consideration for the transfer was her signature on a loan.

There was no evidence adduced as to the value of the debtor's interest in the building at the time of his transfer to his wife. It appears, from the face of the 1978 deed from the corporation to debtor and his wife, that debtor and his wife held the building as tenants by the entirety. *See, Pfaffinger v. Seely*, 134 Or. 542, 291 P. 1015 (1930); *Pierce v. Hall*, 223 Or. 563, 355 P.2d 259 (1960).

The court notes that an entireties interest is difficult to value. Judge Hess discussed this problem in detail in *In re Odegaard*, 31 B.R. 718 (Bankr.D.Or.1983).

In any case, this court heard no testimony nor was any other evidence produced as to the value of the debtor's interest in the building. As such, it would be impossible to determine whether the consideration for the transfer was adequate or not. The trustee's fraudulent transfer suit is no help to Nike as the parties therein have settled short of any determination on the merits. Based on the minimal record, this court simply cannot find, that Nike has sustained its burden of proving fraud or inequitable conduct by clear and convincing evidence.

■ The irony is that if Nike could successfully argue that the conveyance from the debtor to his wife was fraudulent or that Donna Luby and the debtor engaged in inequitable conduct, Nike would then, in all likelihood, have a remedy against the building, as its judgment lien would attach. O.R.S. 95.260 and *Roth–Zachry Heating, Inc. v. Price*, 77 Or.App. 382, 713 P.2d 634 (1986). Thus marshaling's third require-

ment (that only the senior creditor has a right to both assets) would not be met.

Based on the above, Nike's defense of marshaling cannot be sustained and debtor's motion must be granted avoiding Nike's lien in its entirety; an order consistent herewith shall be entered.

This opinion constitutes the court's findings of fact and conclusions of law; they shall not be separately stated.