58460. TRUST COMPANY OF COLUMBUS v. ASSOCIATED GROCERS CO-OP, INC. et al.

Banke, Judge.

The appellant bank sued the appellees, Associated Grocers Co-Op, Inc., and Louis Borgh, to recover damages for conversion, alleging that Associated Grocers had unlawfully appropriated certain property in derogation of a security interest held by the bank and had then sold it to Borgh. Borgh was alleged to have had knowledge of the security interest and therefore to have acted fraudulently in purchasing the property. This appeal is from a grant of summary judgment in favor of Borgh.

The property involved was the inventory and equipment located at a grocery store formerly owned and operated by McCoy Grocery Company, Inc. Both the bank and Associated Grocers were creditors of McCoy Grocery, and each claimed a security interest in the property. Associated Grocers claimed priority by virtue of a financing statement filed on March 24, 1975; however, there is a serious issue as to whether Associated Grocers had any underlying security agreement with the store. The bank claims priority by virtue of two financing statements, one filed on June 21, 1971, and the other filed on May 14, 1976. Associated Grocers seized the equipment and the inventory on August 8, 1977, pursuant to an agreement with the store, and sold it to appellee Borgh on November 1, 1977. *Held:*

1. There is absolutely no evidence, nor is there any allegation, that Borgh made any misrepresentation of fact to the bank, either by word or by deed. Nor is there any evidence or allegation that Associated Grocers made any such misrepresentation so as to raise an issue of whether the two appellees were engaged in a conspiracy to defraud the bank. Borgh was accordingly entitled to summary judgment on the fraud issue. See generally Code § 105-302; *Cosby v. Asher,* 74 Ga. App. 884 (41 SE2d 793) (1947).

2. "Where property is subject to a security interest, an exercise of dominion or control over the property which is inconsistent with the rights of the secured party, constitutes, as to him, a conversion of the property; and there may be conversion by [a] secured party where his acts are in defiance of the rights of others in the property." 79 CJS Supp. 92, Secured Transactions, § 84. See *International Harvester v. Commercial Credit &c. Corp.,* 125 Ga. App. 477 (1) (188 SE2d 110) (1972). "Where a sale of collateral is, with respect to the secured party, a conversion of the collateral, there is a conversion on the part of the one who sells, as well as on the part of the one who purchases, and the purchaser may be liable regardless of his intent, and of his lack of actual knowledge of the rights of the secured party." 79 CJS Supp., supra, at p. 93. See *Charles S. Martin v. Indon Industries, Inc.,* 134 Ga. App. 179, 181 (2) (213 SE2d 900) (1975). See also *Broadway Apt. Co. v. Barnett,* 30 Ga. App.

562 (2) (118 SE 601) (1923); *Shaw v. Wheat St. Baptist Church,* 141 Ga. App. 883, 884 (1) (234 SE2d 711) (1977). The question remaining to be determined in this case is whether the bank's security interest took priority over that of Associated Grocers, thereby making the sale to Borgh a conversion as to the bank.

We find no evidence in the record to indicate that Associated Grocers had an enforceable security interest in the property until it took possession of it. Under these circumstances, the bank's security interest would clearly have priority. "Subject to the provisions of section 109A-4—208 . . . and section 109A-9—113 . . . a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) *the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . .*; and (b) value has been given; and (c) the debtor has rights in the collateral." (Emphasis supplied.) Code Ann. § 109A-9—203 (1). The record contains no support for a conclusion that Associated Grocers ever executed a valid separate security agreement with McCoy Grocery Company. However, the appellees argue that no separate security agreement was necessary because its financing statement filed on March 24, 1975, itself constituted a security agreement.

The general rule is that "[a] financing statement does not create or impose any personal obligation. A financing statement merely gives notice of the existence of a security interest but in itself does not create a security interest, for which a security agreement is required.

"The financing statement which is filed to give notice is a paper separate and apart from the security agreement itself.

"A financing statement cannot serve as a security agreement because it does not grant the creditor a security interest in the collateral and does not identify the obligation owed to the creditor." 1 Anderson, Uniform Commercial Code 469, § 9-402.4 (2d Ed. 1971). Accord, *First Nat. Bank &c. Co. v. McElmurray,* 120 Ga. App. 134, 140 (169 SE2d 720) (1969). See also 68 AmJur 868, Secured Transactions, § 42.

The appellees cite *First Nat. Bank &c. Co. v. Olivetti Corp.*, 130 Ga. App. 896 (204 SE2d 781) (1974) as authority for their contention that the security agreement may be included in the financing statement and need not be a separate document. In that case, the secured party had filed a financing statement purporting to cover "all equipment [copying machines] heretofore and hereafter entrusted" to the debtor, who was a merchant engaged in the business of selling copying machines. This court determined, both from the financing statement and from other documents of record in the case, that the parties intended for the supplier to retain what amounted to a purchase money security interest in the goods and further determined that this intention was incorporated in the financing statement itself, making a separate security agreement unnecessary.

While the indebtedness secured in *Olivetti* was clearly identifiable as the purchase price of the equipment, the indebtedness purportedly secured in this case cannot be identified by reference to the financing statement, nor, for that matter is it identified or described in any other document cited to us from the record. Certainly, there is no basis for a conclusion that the security interest was intended to secure only the purchase price of goods delivered to the store for resale. In fact, it is clear from the appellees' argument that at least a portion of the alleged indebtedness pre-existed the financing statement. Under these circumstances, we find no support for the appellees' contention either that the security agreement was incorporated into the financing statement or that one existed at all. Thus, from the record before us, it appears that Associated Grocers did not acquire an enforceable security interest in the store's equipment and inventory until it took possession on August 8, 1977 (see Code Ann. § 109A-9—203 (1), supra) and that the appellant's security interest, having been perfected at the latest on May 14, 1976, by the filing of a financing statement, was entitled to priority. It follows that the trial court erred in granting summary judgment to Borgh on the conversion issue.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Underwood, J., concur.*

ARGUED SEPTEMBER 25, 1979 — DECIDED OCTOBER 19, 1979 —
REHEARING DENIED DECEMBER 5, 1979 — 

*Kenneth M. Henson,* for appellant.
*John T. Laney, III, Jacob Beil,* for appellees.