678 P.2d 52

**WESTERN IDAHO PRODUCTION CREDIT ASSOCIATION, L.V. Gray Farms, Inc., Elden E. Gray and J. Joyce Gray, husband and wife, and Gary D. Stiehl and Martha L. Stiehl, husband and wife, Plaintiffs-Appellants,**

v.

**SIMPLOT FEED LOTS, INC., a corporation, Defendant-Respondent.**

No. 14619.

Supreme Court of the State of Idaho.

Feb. 29, 1984.

D. Blair Clark, of Anderson, Kaufman, Ringert & Clark, Boise, for plaintiffs-appellants.

Gary D. Babbitt, of Hawley, Troxell, Ennis & Hawley, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from summary judgments in favor of defendant-respondent Simplot and against L.V. Gray Farms, Inc., et al. (hereinafter "farmers") who had grown and sold grain and Western Idaho Production Credit Association (hereinafter "WIPCA"), who held a security interest in that same grain. The farmers had sold the grain to one Martin, who in turn sold to Simplot. We affirm.

Although this appeal is from summary judgment, the relevant facts were stipulated by the parties and there is no contention that additional disputed or controverted facts must be resolved. Rather, the only issues presented on this appeal are the legal results which flow from the undisputed facts.

WIPCA financed the production of crops by the three farming entities and held perfected security interests in the growing crops. Those security agreements provided, "Debtor agrees not to sell ... any

collateral without the consent of Secured Party." However, in practice, WIPCA allowed the farmers to sell crops out of the field at the discretion of the farmers so long as the gross sales proceeds went to WIPCA. Here, at all relevant times, WIPCA knew that the farmers sold secured agricultural products without giving prior notice of the sales. In the instant case, the farmers, through an agent, informed a manager of WIPCA that the farmers would be selling barley to Martin. WIPCA's manager imposed no restrictions on the sale and observed that the sale was for a good price. The farmers shipped the barley to Martin's Canyon County feed lot where it was commingled with barley he had purchased from other sources.

Shortly after the delivery of the barley to Martin and on August 6, Simplot purchased approximately 779,000 pounds of barley from Martin, for which it paid Martin $43,843.[1] The delivery of that barley was completed on August 20, 1979, and Simplot thereafter fed the barley to cattle at the Simplot feed lot. Simplot had no actual notice that any of the barley had been, at any time, covered by any security interest.

Martin failed to pay the farmers for the barley but on August 24 delivered a check in full payment therefor, which check was dishonored. Hence, the farmers have received no payment from Martin.

Thereafter, no demand of any nature was made upon Simplot by WIPCA or the farmers until June 12, 1980, when WIPCA demanded return of the barley or its value from Simplot. By that date, Simplot had fed all the barley to its cattle and had disposed of the cattle. The farmers brought action against Simplot in the nature of a tort action for conversion seeking the value of the barley. The trial court, upon motion therefor, issued summary judgment in favor of Simplot. We affirm.

▇▇▇ The farmers argue that their action in conversion is based on the allegation that the sale to Martin was a fraudulent

transaction. We need not decide if such sale was "fraudulent." "[W]here there is a bona fide purchase of goods which the true owner was originally induced to sell by fraud," the bona fide purchaser cuts off the original owner's equitable right to rescind the sale, and "such a purchaser is not liable to the original owner for conversion." *W. PROSSER, LAW OF TORTS* § 15 (4th ed. 1971). Here, it is not disputed that Simplot was a good faith purchaser of the goods for value. *See also* I.C. § 55–909, which indicates that the provisions of that chapter dealing with fraudulent transfers do not impair the title of a purchaser for a valuable consideration unless the purchaser had previous notice of the fraud. Hence, regardless of any rights existing in the farmers under the UCC, an action for conversion cannot be sustained since Simplot was a good faith purchaser for value. Also, as noted by the trial court here, a plaintiff in a conversion action must establish that he had title to the property or had the right to possess the property at the time of the conversion. *National Produce Distributors v. Miles & Meyer, Inc.*, 75 Idaho 460, 274 P.2d 831 (1954); *Forbush v. San Diego Fruit Etc. Co.*, 46 Idaho 231, 266 P. 659 (1928); *Bowman v. Adams*, 45 Idaho 217, 261 P. 679 (1927); Restatement (Second) of Torts §§ P 224A, 225 (1965); *W. PROSSER, LAW OF TORTS* § 15 (4th ed. 1971). Here it is clear that a sale of the barley had been made to Martin and the farmers had taken no security interest in the barley. Clearly, the farmers did not possess the barley when Martin sold it to Simplot. The farmers do, however, claim a right to possess the barley under the provisions of the UCC. We disagree. Although a seller of goods (farmers) may have certain rights to recover goods from an insolvent buyer (Martin), I.C. § 28–2–702, and the farmers may treat a sale as void if retention of the goods is fraudulent, I.C. § 28–2–402, nevertheless those rights are altered when the goods enter the hands of

---

1. There was no showing of how much, if any, of the barley which Martin sold to Simplot was grown by the farmers here. Because of our disposition on other grounds, we do not discuss or rule upon the problem of commingling.

a good faith purchaser for value. I.C. § 28-2-403(1), provides: "When goods have been delivered under a transaction of purchase the purchaser has [power to transfer good title to a good faith purchaser for value] even though ... (d) the delivery was procured through fraud punishable as larcenous under the criminal law." It is therein provided, "that even where delivery was procured through criminal fraud, voidable title passes." *J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE* § 3-11 (2d ed. 1980). As indicated in I.C. § 28-2-403 Comment 2, the type of fraud of which the farmers accuse Martin here "is for the purpose of helping conviction of the offender; it has no proper application to the long-standing policy of civil protection of buyers from persons guilty of such trick or fraud."

■ Farmers next assert rights under I.C. § 28-2-507(2), which provides: "[w]here payment is due and demanded on the delivery to the buyer of goods ..., his right as against the seller to retain or dispose of them is conditional upon his making the payment due." That language is of no assistance to the farmers here since Comment 3 explanatory of that section states that the words "'right as against the seller' ... are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this ... [Chapter]."

■ The farmers also argue that their action against Simplot may be maintained under I.C. § 28-2-722. We disagree. That statute would allow action against Simplot in the event Simplot "so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract ...." Here it is clear that Simplot did not interfere with the contract between Martin and the farmers in any fashion or indeed that Simplot had any knowledge of such contract.

The summary judgment in favor of Simplot and against the farmers is affirmed.

We turn now to WIPCA's contentions. As indicated above, WIPCA held a security interest in the barley. As provided in I.C. § 28-9-201, "Except as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Thus, WIPCA's security interest is enforceable against Simplot unless the transaction comes within an exception to the general rule.

I.C. § 28-9-306(2) provides: "Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof *unless the disposition was authorized by the secured party* in the security agreement or otherwise...." (Emphasis added.) Thus, when a disposition of collateral is authorized by the secured party, the party purchasing the collateral takes free of the security interest. I.C. § 28-9-306 Comment 3, and I.C. § 28-9-307 Comment 2.

■ The course of dealing between WIPCA and the farmers and the policies of WIPCA clearly indicate the authorization to sell crops in which WIPCA held security interests and that WIPCA further authorized this particular sale by the farmers to Martin. *See First Nat. Bank, Etc. v. Iowa Beef Processors,* 626 F.2d 764 (10th Cir. 1980). Since WIPCA authorized the disposition of the collateral, it lost its security interest in the collateral under the provisions of I.C. § 28-9-306(2). *See Kinetics Tech. Intern. Corp. v. Fourth Nat. Bank,* 705 F.2d 396 (10th Cir.1983); *First Nat. Bank, Etc. v. Iowa Beef Processors, supra; In re Ellsworth,* 28 B.R. 13 (Bkrtcy.App. 9th Cir.1983); *Anon, Inc. v. Farmers Production Credit,* 446 N.E.2d 656 (Ind.App. 1983); *Clovis National Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726 (1967).

■ WIPCA argues that it merely "conditionally" authorized the sale of the barley, and since the condition, *i.e.,* payment, has failed, I.C. § 28-9-306(2) does not take effect, the security interest stands, and WIPCA may proceed against Simplot. That argument is clearly inconsistent with

I.C. § 28–9–306 comment 3, which states: "[T]he transferee will take free whenever the disposition was authorized ...." Therein, no distinction is made between conditional authorization or any other kind of authorization. As between a third party purchaser who agreed to no condition and the security holder which permitted the goods to be placed on the market, clearly the third party has superior right to the goods. *Lisbon Bank & Trust Co. v. Murray,* 206 N.W.2d 96 (Iowa 1973). In *First Nat. Bank, Etc. v. Iowa Beef Processors, supra,* at 769, the Court held:

> "We conclude that the policy of the Uniform Commercial Code to promote ready exchange in the marketplace, see *Riverside Nat'l Bank v. Law,* 564 P.2d 240, 243 (Okl.1977), outweighs the secured party's interest in the collateral under these circumstances. Therefore, we hold that even though the secured party conditions consent on receipt of the proceeds, failure of this condition will not prevent that consent from cutting off the security interest under section 9–306(2)."

*See also United States v. Hansen,* 311 F.2d 477 (8th Cir.1963); *Lisbon Bank & Trust Co. v. Murray, supra.*

Since we hold that the sale here was authorized by WIPCA, we need not rule as to whether WIPCA waived its security interest, but we note that those jurisdictions which have allowed conditional authorization have often held that the security interest is nonetheless lost upon facts similar to the case at bar upon the theory that the secured party has waived its security interest. *See e.g., Anon, Inc. v. Farmers Production Credit, supra,* N. Cent. Kan. Prod. Cred. Ass'n v. Wash. Sales Co., 223 Kan. 689, 577 P.2d 35 (1978); *see also Clovis National Bank v. Thomas, supra.*

 WIPCA also argues that because farm products are involved, the security interest was retained under I.C. § 28–9–307(1), which provides: "[a] buyer in ordinary course of business ... other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his

seller ...." We disagree. WIPCA's argument is controverted by comment 2 to that section of the UCC: "if the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this section." *See First National Bank v. Iowa Beef Processors, supra; Lisbon Bank & Trust Co. v. Murray, supra.*

We have examined the remaining assertions of WIPCA and find them to be without merit. The orders of the district court granting summary judgment in favor of Simplot against both the farmers and WIPCA are affirmed. Costs to respondent. No attorneys' fees for this appeal.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.