## 74132. METTER BANKING COMPANY v. FISHER FOODS, INC.
(359 SE2d 145)

BIRDSONG, Chief Judge.

This is an appeal from a grant of summary judgment to Fisher Foods, Inc., upon the trial court's determination that Fisher Foods had a prior perfected security interest in "the crops, growing or to be grown," (to wit, Vidalia Onions), of debtors He-Bo Farms, Inc. and James Bowen. The appellant, Metter Banking Company, contends that the trial court erred in the grant of summary judgment to Fisher Foods, and in denying summary judgment to Metter Banking Company for the contended reasons that the bank held a prior perfected security interest in He-Bo Farms' onions, and that Fisher Farms was aware of such superior interest. *Held*:

We reverse, but not for the reasons assigned by appellant Metter Banking Company.

---

[4] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

The bank advanced money to He-Bo Farms in 1981, obtaining, under a written security agreement, a security interest described in the December 28, 1981 financing statement, as follows: "All inventory of . . . He-Bo Farms, Inc. . . . . of every kind and description, whether now or hereafter existing or acquired, all accounts receivable, and all contract rights of business, whether now existing or hereafter acquired, evidencing any obligation to debtor for payment for goods sold or leased or services rendered, all interest of debtor, in any goods the sale or lease of which shall give or shall give rise to any of the foregoing, and all products and proceeds therefrom." A box was checked on the financing statement indicating "Proceeds are also covered," but a like box indicating "Crops are covered," was not checked.

In December 1982, appellee Fisher Foods, Inc., an Ohio corporation, lent He-Bo Farms and Bowen $200,000. The president of Fisher Foods came to Metter to discuss this loan with He-Bo and with the Metter Banking Company. A written agreement arose from these negotiations, wherein Fisher Foods agreed to lend He-Bo $200,000; He-Bo and Bowen assigned to Fisher Foods one dollar for each and every bag of Vidalia Onions owned, processed or packaged and sold by or through He-Bo Farms and Bowen; He-Bo Farms and Bowen agreed to cause all invoices and payments for such onions to be made to Metter Banking Company and He-Bo or Bowen, and deposited in Metter Banking Company; the bank acknowledged He-Bo Farms' assignment of $1.00 per bag to Fisher Foods, and agreed to segregate and remit to Fisher Foods $1.00 for each and every bag sold. The agreement also granted Fisher Foods "a security interest in the Vidalia Onion crop, whether growing or harvested, and whether packaged, stored or in process," to the extent of the unpaid balance of the loan. Metter Banking Company acknowledged this agreement in writing "solely for the purpose of acknowledging [He-Bo Farms' assignment of $1.00 per bag to Fisher Foods] and [the bank's] agreement to segregate and pay funds received to Fisher Foods, Inc."

Fisher Foods then, on December 27, 1982, filed a financing statement covering "[t]he crops growing or to be grown as listed. . . ."

Matters proceeded as anticipated, until early 1984, when He-Bo Farms defaulted on Fisher Foods' loan. In February 1984, Fisher Foods obtained a judgment against He-Bo Farms in the amount of $113,075.71 plus costs and interest. Thereafter, according to Fisher Foods, He-Bo Farms offered to ship portions of its onion crop to Fisher Foods in partial satisfaction of the judgment debt, and appellee Fisher Foods accepted this offer, "as it had a valid perfected security interest in the crop by virtue of the December 27, 1982 financing statement." The appellant Metter Banking Company then sued Fisher Foods for the value of the onions, $54,475 as evidenced by the invoices representing those shipments. The trial court found that the

bank did not, as it claimed, have a prior perfected security interest in He-Bo Farms' onion crop, while Fisher Foods did, and granted judgment accordingly.

The appellant bank does not challenge the sufficiency of Fisher Foods' stated interest in Fisher Foods' financing statement or in its security agreement, but the bank earnestly contends its own prior financing statement, as to "inventory," includes "crops," and makes other arguments centered upon Fisher Foods' knowledge of the bank's interests. However, we agree with the trial court that clearly the bank did not have a perfected interest in "the crops." See OCGA § 11-9-109 (3) and (4). Be that as it may, it is clear that what the bank did have was a prior perfected interest in all of He-Bo's "*accounts receivable and all contract rights* of business, whether now existing or hereafter acquired, evidencing any obligation to debtor for payment of goods sold, [and] *all interest of debtor in any goods the sale . . . of which shall give rise* to any of the foregoing, and all products *and proceeds therefrom.*" (Emphasis supplied.)

OCGA § 11-9-106 defines "account" in the sense of collateral, as "any *right to payment* for goods sold . . . *whether or not it has been earned by performance.*" (Emphasis supplied.) Formerly this code section included the designation of "contract rights" which meant the right to payment to be earned in the future. See former Ga. Code Ann. § 109A-9—106, Harrison ed., Ga. Revisers' Comments; *E. Turgeon Constr. Co. v. Elhatton Plumbing &c. Co.*, 292 A2d 230 (S. Ct. R. I. 1972). This distinction is now included in the definition of "accounts" in OCGA § 11-9-106, but the substance of the rights granted remains the same. He-Bo Farms had a right to payment for its onions, to be earned by sale, and did not have the right to give it up and thereby defeat the bank's perfected security interest in He-Bo's contract rights and accounts receivable "*whether or not [they have] been earned by performance.*" (Emphasis supplied.) OCGA § 11-9-106. It was certainly not intended that the debtor could defeat entirely the bank's perfected interest in its accounts receivable by giving away its product to another creditor with an interest in the product which is inferior in point of perfection. "The entire thrust of [Article 9 of the UCC] is the protection of the innocent creditors from a secret transfer of substantial intangible assets upon which they relied." *E. Turgeon Constr. Co.*, supra, pp. 233-234.

Moreover, the security agreement between He-Bo Farms and the bank evidenced the intent to secure as collateral the substantial right of He-Bo Farms to sell its produce and be paid for it. The bank's security agreement required precise accounting by He-Bo Farms of the disposition of its produce, its accounts, profit, loss, collections, discounts, and receivables actually charged off He-Bo Farms' books. He-Bo Farms covenanted that "except for the sale or lease of Inven-

tory in the ordinary course of its business, will not sell, lease, assign or create or permit to exist any lien on or security interest in any Collateral to or in favor of anyone other than the Bank. . . ." OCGA § 11-9-306 (1) and (2) provide that "proceeds" include whatever is received upon the sale, exchange, *or other disposition* of collateral or proceeds; and that "a security interest continues in collateral notwithstanding sale, exchange *or other disposition* thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds. . . ." (Emphasis supplied.) The security interest of the bank evidenced in its 1981 financing statement covered not only accounts receivables and contract rights of business, but "all interest of the debtor in any goods the sale or lease of which *shall . . . give rise to any of the foregoing and all products and proceeds therefrom.*" (Emphasis supplied.)

Furthermore, the bank's right to collect and receive the payment for He-Bo's onions was agreed to and acknowledged by Fisher Foods in its own security agreement, notwithstanding Fisher Foods' security interest in He-Bo Farms' "crops . . . growing or to be grown." That agreement between Fisher Foods and He-Bo Farms also evidenced Fisher Foods' intent to recoup its loan from the sale of the onions and the assignment to it of $1.00 per bag to be remitted by the bank out of the accounts received. It was intended by the bank in its security agreement that the "accounts received" would be all of the accounts receivable and contract rights of business. Even if Fisher Foods theoretically had had a right to the "crops" themselves in defeat of the bank's prior perfected right to accounts receivable, it subordinated that right by agreeing to be paid out of the accounts received by the bank under the bank's security agreement with He-Bo Farms. OCGA § 11-9-316. See *First Security Bank of Utah v. Wright*, 521 P2d 563 (S. Ct. Ut. 1974). This debtor was allowed to sell his onions but was obliged to *bring his proceeds to the bank.* See *Moffat County State Bank v. Producers Livestock Mktg.*, 598 FSupp. 1562, 1564 (U. S. Dist. Ct. Colo. 1984). When he gave the onions to a creditor with an inferior perfected interest in the onions themselves, a creditor who moreover had agreed to be paid out of accounts received by the bank, the bank's collateral was converted under OCGA § 11-9-306. See *Trust Co. of Columbus v. Assoc. Grocers Co-Op*, 152 Ga. App. 701, 702 (263 SE2d 676). See also *First Nat. Bank v. Atchison County Auction Co.*, 699 P2d 1032 (10 Kan. App. 2d 382) (1985).

We note that the commercial code regards the sale of farm products on a higher level than most other sales, in that a security interest created by the seller of farm product follows even to a buyer in the ordinary course of business. OCGA § 11-9-307 (1); *First Nat. Bank*, supra; see *Bank of Madison v. Tri-County &c. Co.*, 123 Ga. App. 768

(182 SE2d 687), rev'd on other grounds, 228 Ga. 325 (185 SE2d 393). See also OCGA § 11-9-312 (2), which is not in issue in this case. The object is, obviously, to give greater protection to the financiers of farm production. In this light, it is unreasonable to assume the debtor can defeat a perfected prior interest in the *sale* of his farm products by giving the products themselves to a creditor with a subsequently perfected interest in the products, particularly when that creditor by agreement acknowledges the bank's security interest in the accounts receivable and takes the security interest in those products subject to that prior perfected interest in the sale, or accounts receivable.

The trial court erred in granting summary judgment to the appellee Fisher Foods on the basis of its perfected interest in the "crops." The appellant bank's perfected interest in the sale of the products, the accounts receivable, was prior and superior to, the appellee's interest in the crops; and furthermore, this superiority was agreed to by the appellee. Summary judgment should have been granted to the appellee bank.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

## On Motion for Rehearing.

The appellee Fisher Foods, Inc. contends we overlooked the obvious fact that these items were onions before they were accounts receivable. If we split the hair so fine, it becomes clear that Fisher Foods itself did not have a superior interest in the onions unless they were "*growing* or *to be grown.*" These onions do not fit that description. They were shipped to Fisher Foods after He-Bo asked it to "purchase certain onions." They were bagged for sale and even bore sales invoices reflecting their sale price and expected remittance of the price to the Metter Banking Company. In this posture, they had long since left the state of "growing or to be grown."

But as for the deep question whether the onions were onions before they were accounts, to pose the question is to admit the answer, which is, that if Fisher Foods' interest could attach before the onions were sold, so could the bank's interest in accounts and contract rights, "whether now or hereafter acquired" and whether the rights of sale were "earned by performance." OCGA § 11-9-106. And if the line is so dim as to be discerned only with the most searching philosophical acuity, and even then not clearly, then at best we have *conflicting security interests*, in which case the bank takes priority in time of filing or perfection. OCGA § 11-9-312 (5) (a).

*Motion for rehearing denied.*

446

DECIDED MAY 20, 1987 —
REHEARING DENIED JUNE 25, 1987 — 

*Carroll Van Reynolds*, for appellant.
*Gerald M. Edenfield, Michael J. Classens*, for appellee.