842 P.2d 282

**EASTERN IDAHO PRODUCTION CREDIT ASSOCIATION,**
Plaintiff–Respondent,

v.

**IDAHO GEM, INC., formerly an Idaho corporation, Robert W. Shawver and Peggy Shawver, husband and wife, Defendants–Appellants,**

**and**

**John Does I Through X, Defendants.**

No. 18827.

Supreme Court of Idaho,
Boise, September 1991 Term.

Nov. 24, 1992.

Steven A. Hoskins, Idaho Falls, for defendants-appellants.

Hansen, Beard, Martin & St. Clair, Idaho Falls, for plaintiff-respondent. John G. St. Clair, argued.

BISTLINE, Justice.

Beginning in 1983, EIPCA lent money for the purpose of crop production to Blair W. Heinz ("Heinz"). All of Heinz's crops were subject to EIPCA's perfected security interest.[1] In the crop year 1985, Heinz

---

1. EIPCA obtained a perfected written security interest in all Heinz's crops grown in 1983, 1984

raised a crop which included certain seed potatoes. In June of 1986, Heinz sold seed potatoes from his 1985 crop to W.L. Baker, Inc., an Idaho corporation ("Baker"), and Baker agreed to give Heinz $24,095, or in the alternative, a prescribed amount of commercial potatoes, as payment for the seed potatoes. In the same year, Baker planted those seed potatoes along with seed potatoes purchased from other growers.

However, in April of 1986, two months prior to his purchase from Heinz, Baker had filed for relief under Chapter 11 of the United States Bankruptcy Code. From that date forward, Baker operated as a debtor-in-possession. In May of 1986, the bankruptcy judge issued a cash collateral order allowing Baker to use certain cash proceeds and providing First Security Bank of Utah ("First Security") with a first lien on all of Baker's 1986 crops, including any crop raised from the seed potatoes Baker had purchased from Heinz. A second cash collateral order was entered in March of 1987, also granting to First Security a first lien in Baker's crops grown in 1986 and all subsequent years.

In August of 1986, Heinz filed a seed lien against Baker in the Oneida County recorder's office. Heinz did not obtain an order from the United States Bankruptcy Court lifting the automatic stay protecting Baker which was in effect as a result of 11 U.S.C. § 362, or authorizing Baker to grant him a security interest in the seed potatoes Heinz had sold to Baker.

In June of 1987, Baker consigned certain potatoes, including a portion of Baker's 1986 potato crop (grown from Heinz's seed potatoes), to Idaho Gem for sale. Idaho Gem sold the potato crop for Baker, resulting in a $52,876 payment to Baker. Due to the existence of the cash collateral orders issued by the bankruptcy court, Idaho Gem made the check payable to Baker, First Security, and Heinz. The check was negotiated by First Security and Baker and was

paid by West One Bank and Key Bank without the signature of Heinz. Baker subsequently failed to pay Heinz for the seed potatoes received or to give him the amount of commercial potatoes previously agreed upon, and Heinz failed to pay EIPCA. Following default by Heinz, EIPCA obtained an assignment of Heinz's rights against Baker. EIPCA then initiated the present action against Idaho Gem for the value of the potato crop consigned to it by Baker and for which Idaho Gem had made payment to Baker, First Security, and Heinz.

EIPCA's only alleged security interest in the potato crop of Baker is by virtue of the assignment of Heinz's rights against Baker or by virtue of EIPCA's perfected security interest in Heinz's crops continuing from Heinz to Baker to Idaho Gem.

The first method does not elevate EIPCA to the position of secured creditor because EIPCA must stand in the shoes of its assignor, Heinz. The seed lien Heinz filed in August of 1986 was inadequate to transform him into a secured creditor of Baker because Baker was under the protection of the bankruptcy court at the time of the filing.

Thus, EIPCA's recourse against Idaho Gem must lie with finding a continuing security interest in the collateral or its proceeds. If EIPCA does not have an effective security interest in the proceeds from the crops Idaho Gem sold for Baker, EIPCA is not a secured creditor of Idaho Gem and thus cannot recover.

I. BECAUSE IT AUTHORIZED HEINZ TO SELL THE CROP TO BAKER, EIPCA LOST ITS SECURITY INTEREST IN COLLATERAL CONSISTING OF HEINZ'S SEED POTATO CROP

 The district court did not explicitly determine whether EIPCA's security interest in Heinz's seed potatoes (the collateral for EIPCA's loan to Heinz) continued in spite of Heinz's sale of them to Baker,

and 1985 by filing financing statements with the recorders offices of Clark and Madison Counties. As of January 12, 1987, EIPCA's security interest in crops of Heinz was listed on the

master list or cumulative supplement distributed by the Secretary of State as required by I.C. § 28–9–407(5).

stating only that, "[p]laintiff's security interest continues in the collateral ... unless the disposition was authorized...." R. at 62. Idaho Gem alleges that EIPCA did authorize Heinz to sell the seed potatoes, thereby cutting off EIPCA's security interest in them, pursuant to I.C. § 28–9–306.[2] EIPCA contends that it did not unconditionally authorize Heinz's sale of the collateral to Baker, and that in any case, the commercial grade potatoes consigned to Idaho Gem by Baker are traceable either as "proceeds" of the Heinz seed potato crop or as a "farm product" as defined by I.C. § 28–9–109.[3]

The parties in this action stipulated to several facts relevant to the issue of authorization:

[1] On more than one occasion, Heinz was permitted by EIPCA to sell crops as he saw fit provided that the crops were sold for fair market value and that the proceeds from the sale of said crops were applied to the loan balance due EIPCA. This arrangement was applied by EIPCA to most of its agricultural loan customers and is typical in the industry.

[2] EIPCA requires its agricultural borrowers to have proceeds checks drawn payable to both the borrower and EIPCA. If the checks were not drawn jointly to [the] borrower and EIPCA, EIPCA required [the b]orrower to remit the proceeds to EIPCA.

[3] In practice, EIPCA did not require Heinz or other agricultural borrowers to obtain written consent from the EIPCA prior to the sale of crops.

[4] EIPCA did not restrict Heinz in how he disposed of his crops in which EIPCA maintained a security interest other than

to require that the crops be sold at fair market value and payments made jointly payable to Heinz and EIPCA. EIPCA also required Heinz to advise EIPCA of all sales.

[5] Heinz would from time to time report to EIPCA the sale that he had or was planning to make for his crops. EIPCA was informed of the sale to Baker.

R. at 32.

From our review of this factual scenario, we determine that this Court's decision in *Western Idaho Product. Credit [WIPCA] v. Simplot Feed*, 106 Idaho 260, 678 P.2d 52 (1984), requires us to find that EIPCA, by authorizing Heinz's sale of the crops to Baker, thereby forfeited its security interest in the seed potato crop collateral. In that cited case, WIPCA financed crop production of three farming entities ("the debtors") and held perfected security interests in the growing crops. The written security agreement provided that the debtors would not sell the collateral without the consent of WIPCA. In practice, however, WIPCA allowed the debtors to sell the crops as long as WIPCA received the sales proceeds. WIPCA knew that the debtors sold the secured crops without prior notice, and on that particular occasion, knew that the debtors were selling barley to Martin. The barley was shipped to Martin where it was commingled with barley from other sources. Shortly thereafter, Simplot purchased barley from Martin, and fed the barley to cattle at the Simplot Feed Lot. Martin failed to pay the debtors, and WIPCA attempted to enforce its security interest in the barley against Simplot.

---

2. I.C. § 28–9–306 states in pertinent part:
(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.... Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.'
(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof *unless the disposition was authorized by the secured party in the security agreement or otherwise*, and also continues in any identifiable proceeds including collec-

tions received by the debtor. (Emphasis added.)

3. Idaho Code § 28–9–109, as here relevant, provides *inter alia*, goods are farm products if they are, "crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states ..., and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory."

We held that when a secured party authorizes a disposition of the collateral, the party purchasing the collateral takes free of the security interest. WIPCA had authorized the debtors to sell the crops in which it had a security interest, and therefore, it lost its security interest in the collateral under the provisions of I.C. § 28–9–306(2). *WIPCA*, 106 Idaho at 263, 678 P.2d at 55; *see also Clovis Nat'l Bank v. Thomas*, 77 N.M. 554, 425 P.2d 726 (1967) (secured party may consent to sale of collateral and thereby waive his rights in same). A similar situation is presented in the case before us. As the stipulated facts amply demonstrate, EIPCA allowed Heinz to dispose of the collateral without obtaining its prior written consent, on the condition that EIPCA was notified, and the crops were sold for fair market value, with EIPCA receiving the proceeds. In the instant case, it is clear than EIPCA was aware of the Heinz sale to Baker.

EIPCA claims that "the better-reasoned authority suggests that where the [creditor][4] is not paid, the authorization to sell is conditional." We dealt with a similar argument in *WIPCA*, and found it unpersuasive, holding that I.C. § 28–9–306(3) makes no distinction between conditional or any other kind of authorization. We reasoned in *WIPCA*:

> As between a third party purchaser who agreed to no condition and the security holder which permitted the goods to be placed on the market, clearly the third party has superior right to the goods. *Lisbon Bank & Trust Co. v. Murray*, 206 N.W.2d 96 (Iowa 1973). In *First Nat. Bank, Etc. v. Iowa Beef Processors*, *supra*, [626 F.2d 764 (10th Cir.1980)] at 769, the Court held:
>
> > 'We conclude that the policy of the Uniform Commercial Code to promote ready exchange in the marketplace, see *Riverside Nat'l Bank v. Law*, 564 P.2d 240, 243 (Okl.1977), outweighs the secured party's interest in the collateral under these circumstances. Therefore, we hold that even though the secured party conditions consent on receipt of the proceeds, failure of this condition will not prevent that consent from cutting off the security interest under section 9–306(2).' *See also United States v. Hansen*, 311 F.2d 477 (8th Cir.1963); *Lisbon Bank & Trust Co. v. Murray*, *supra* [206 N.W.2d 96 (Iowa 1973)].

*WIPCA*, 106 Idaho at 264, 678 P.2d at 56; *see also Trustee Servs. Corp. v. East River Lumber Co. (In re Hodge Forest Indus., Inc.)*, 59 B.R. 801 (Bankr.D.Idaho 1986) (a secured party's perfected security interest lapses when the collateral is sold with that party's consent and the secured party does not condition its consent upon the simultaneous execution of a security agreement and financing statement by the transferee in favor of the secured party).

According to the solid reasoning in *First Nat'l Bank v. Iowa Beef Processors*, 626 F.2d 764 (10th Cir.1980), consent to the debtor's sale, "provided" that the seller remits to the creditor, is not even a true conditional sales authorization:

> In essence, such a condition makes the buyer an insurer of acts beyond its control. The [creditor] has made performance of the debtor's duty to remit proceeds to the [creditor] a condition of releasing from liability a third party acting in good faith. [The buyer] could not ascertain in advance whether this condition would be met, as it could if a condition precedent was involved; nor did [the buyer] have any control over the performance of the condition, as long as it paid [the seller]. A secured party has an interest in protecting its security by conditioning its consent, but it can place conditions that would afford it protection without great unfairness to the good faith purchaser.

*Id.* at 769.

Clearly, according to the course of dealing between EIPCA and Heinz, Heinz had authority to sell the collateral to Baker. Even if the authorization was "conditional," in accordance with *WIPCA* we hold

---

4. The word in respondent EIPCA's brief was "buyer," which, from the context of the argument, appears to be an error. We accept that EIPCA presumably intended "creditor."

that EIPCA's security interest in the crop collateral was extinguished at the time the crop was sold from Heinz to Baker.

We also find no merit in EIPCA's attempted characterization of Heinz's sale to Baker as being outside the general course of dealing, and therefore not authorized. EIPCA's reasoning, that "[t]he authorization given by [EI]PCA was to sell and remit and not the authorization to sell and obtain future crop or future payment," simply restates its argument that authorization of the sale of the collateral was conditioned upon EIPCA's receipt of the proceeds. WIPCA so argued, unsuccessfully, and it does not affect our holding that EIPCA's security interest in the collateral was extinguished pursuant to I.C. § 28–9–306(2).

## II. EIPCA MAINTAINS A SECURITY INTEREST ONLY IN THOSE "PROCEEDS" OF HEINZ'S SEED POTATO CROP RECEIVED BY HEINZ

■ The district court held that EIPCA was "entitled to trace the identifiable proceeds from [Heinz's] potato crop, including cash and non-cash items," citing I.C. § 28–9–306(2) as authority for this proposition.[5] Idaho Code § 28–9–306(2) states that even if no security interest continues in collateral because the sale was authorized by the secured party, "it ... continues in any identifiable proceeds including collections received by the debtor." (Emphasis added.) Idaho Code § 28–9–306(1) defines "proceeds" as:

> ... *whatever is received* upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.' (Emphasis added).

**5.** The district court's holding does not resolve the central issue in this case. EIPCA is undoubtedly entitled to trace the proceeds of the original crop in the sense of *identifying* the payment Idaho Gem received for the crops as

The construction of "whatever is received" in paragraph 1 and the reference to proceeds in paragraph 2 is an issue of first impression in Idaho. The reference in I.C. § 28–9–306(2) to "identifiable proceeds including collections received by the debtor" is ambiguous, and I.C. § 28–9–306(1) does little to clarify. As one commentator notes,

> This provision [U.C.C. § 9–306(2), identical to I.C. § 28–9–306(2)] is capable of being read to say that proceeds, which include collections, must be received by the debtor, or that the proceeds need not by received by the debtor but the security interest will in any event continue in identifiable proceeds regardless of who receives them and it will also continue in collections received by the debtor.

Ray D. Henson, Secured Transactions under the Uniform Commercial Code 197 (2d ed. 1979).

Because the language is ambiguous, it is helpful to look to the purpose and internal logic of I.C. § 28–9–306, as well as to how other courts have resolved the ambiguity.

The Official Comment to I.C. § 28–9–306 advises that "[t]his section states a secured party's right to the proceeds *received by a debtor* on disposition of collateral...." (Emphasis added.) This Comment indicates that the drafters of the Code did not intend to allow a creditor to collect proceeds from everyone to whom the identifiable proceeds might flow. Indeed, reading the last clause of I.C. § 28–9–306 to permit a security interest to continue in proceeds irrespective of who receives the proceeds renders meaningless the clause restricting continuing interests in collateral. As discussed in the last section of this opinion, a creditor's security interest in collateral does not continue if the creditor authorized the collateral's disposition. It would be an anomaly if, as in the instant case, the creditor that authorized the disposition maintained a security interest in the identifiable

proceeds of the collateral. The crucial question on appeal before us is whether EIPCA has retained a security interest in these proceeds so that it is entitled to a judgment against Idaho Gem or the Shawvers.

proceeds when it could not do so in the collateral itself. Therefore, in light of the rest of paragraph 2 and the stated purpose of the section, the more reasonable interpretation of "proceeds" in which a security interest may be retained in paragraph 2 extends only to those proceeds received by the debtor.

Other jurisdictions have split regarding the proper construction of this language. At least one court has held that where the plaintiff creditor failed to prove that the defendant debtor actually had received "identifiable proceeds" from the sale of the plaintiff's collateral, the secured creditor could not rely on U.C.C. § 9–306(1) to trace and collect "proceeds." *Norfolk Product Credit v. Bank of Norfolk*, 220 Neb. 593, 371 N.W.2d 276 (1985).

The case most frequently quoted for the opposite proposition is *Farnum v. C.J. Merrill, Inc.*, 264 A.2d 150 (Me.1970), wherein the Supreme Court of Maine stated:

> We find nothing to support [the] contention that the words 'whatever is received' in line one of 9–306(1) means 'whatever is received by debtor.' Paragraph (1) does not impose that limitation and the fact that paragraph (2) expressly includes collections received by debtor, argues that the proceeds in paragraph (1) has an independent meaning broad enough to include receipts by a receiver.... We are satisfied that paragraph (1) is to be read: *'Proceeds' include whatever is received by anyone....*

*Id.* at 156 (emphasis added); *see also, e.g., Central Washington Bank v. Mendelson-Zeller, Inc.*, 113 Wash.2d 346, 779 P.2d 697, 704 (1989) (two creditors claiming proceeds). But the *Farnum* court, in focusing on paragraph 1, fails to recognize the ambiguity inherent in the phrasing of paragraph 2; the court simply assumes that paragraph 2 includes all proceeds, not just those received by the debtor, and thereby fails to examine the issue in depth. And in *Central Washington Bank*, the Washington court was concerned that holding otherwise would reverse the Code's creditor priority rules. In the case before us, however-

er, if EIPCA were allowed to collect the proceeds other than as received by Heinz, EIPCA might very well be in a better position than First Security, despite the fact that the bankruptcy judge issued First Security a first lien and never recognized Heinz's seed lien. Awarding $24,095 to EIPCA would result in the anomaly of EIPCA recovering the entire amount of its lien, even though, had Idaho Gem's check been made out to EIPCA—along with First Security and Baker—EIPCA might have received much less.

Considering the stated purpose of I.C. § 28–9–306 and the need for internal logic in paragraph 2 therein, we believe the better rule is that the secured party may only establish a security interest in those proceeds received by the debtor, or at the very least by one standing in the shoes of the debtor.

We therefore hold that EIPCA did not have a security interest in the money received by Idaho Gem upon sale of the crops and that, hence, EIPCA was not entitled to collect money from Idaho Gem. In thus deciding, it is unnecessary to reach the other issues raised by appellants.

The judgment of the district court is reversed and the cause is remanded to the district court for further proceedings in conformance with the views herein expressed. Costs non-inclusive of attorney fees to the defendants-appellants.

BAKES, C.J., JOHNSON and McDEVITT, JJ., and McDERMOTT, J. Pro Tem, concur.