**FIRST STATE BANK, Nora Springs, Appellant,**

v.

**William CLARK and Mike Clark, d/b/a Johnson Chemicals, Appellees.**

No. 99–1995.

Supreme Court of Iowa.

Oct. 10, 2001.

Ralph A. Smith of Noah, Smith & Schuknecht, P.L.C., Charles City, for appellant.

Brian R. McPhail of Gross & McPhail, Osage, for appellees.

Robert L. Hartwig, Iowa Bankers Association, Des Moines, and Thomas E. Salsbery of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for amicus curiae Iowa Bankers Association.

CADY, Justice.

This appeal requires us to determine whether a creditor's perfected security interest in crop proceeds continues under Iowa Code section 554.9306(2) (1999) when the proceeds were not received by the debtor. We reverse the decision of the district court and remand the case for further proceedings.

## I. Background Facts and Proceedings.

First State Bank of Nora Springs financed the farming operation of Daniel

Yezek. Yezek was a grain farmer and First State Bank had a perfected security interest in his crop, as well as any proceeds from the crop. First State perfected its security interest by filing a financing statement with the Iowa Secretary of State, giving it a priority status over Yezek's other creditors in the crop and proceeds.

In 1998, First State notified Yezek it would no longer finance his crop production. Yezek subsequently informed First State he intended to sell his corn to the elevator in St. Ansgar. On February 5, 1999, First State gave written notice to Grain Millers, Inc. in St. Ansgar of its security interest in the crop pursuant to Iowa Code section 554.9307(4)(a).

On April 9, 1999, Yezek sold his crop to St. Ansgar Mills, Inc. St. Ansgar Mills is a separate elevator from Grain Millers, Inc., and was not notified of First State's perfected security interest in Yezek's crop. Yezek directed St. Ansgar Mills to pay the proceeds from the sale of the corn to William and Mike Clark, doing business as Johnson Chemicals. Johnson Chemicals was an unsecured creditor of Yezek and was apparently unaware of First State's security interest in the crop proceeds. St. Ansgar Mills paid Johnson Chemicals $6,758.80.

After learning of the transfer, First State promptly notified Johnson Chemicals of its security interest in the proceeds. Johnson Chemicals refused to deliver payment to First State.

First State filed a conversion action against Johnson Chemicals. Both parties filed motions for summary judgment. First State acknowledged it failed to give St. Ansgar Mills notice of its security interest in the corn. However, it claimed this did not release its security interest in the proceeds. Conversely, Johnson Chemicals claimed that First State lost its security interest in the proceeds when St. Ansgar Mills purchased the crops without notice of the First State security interest. Alternatively, Johnson Chemicals claimed any security interest held by First State failed to attach to the proceeds because the proceeds were never actually received by Yezek.

The district court granted Johnson Chemical's motion for summary judgment and dismissed First State's petition. The district court held First State lost its security interest in the collateral when St. Ansgar Mills purchased the crop pursuant to section 554.9307(4)(a). Additionally, the court concluded First State's security interest did not follow the crop proceeds because the proceeds from the sale were never in Yezek's possession.

First State appeals. It acknowledges that the failure to adhere to the notice requirements of section 554.9307(4)(a) effectively extinguished its security interest in the collateral as to St. Ansgar Mills. However, it claims its security interest in the proceeds from the sale continued pursuant to section 554.9306(2).

## II.  Standard of Review.

Our review is for errors at law. *St. Ansgar Mills, Inc. v. Streit,* 613 N.W.2d 289, 292 (Iowa 2000). We will uphold the district court's decision to grant summary judgment if there is no genuine issue of material fact. *Id.* Because the facts are not in dispute, the question we must resolve is whether the district court correctly applied the law to the facts. *Id.*

## III.  Proceeds.

Our uniform commercial code establishes the rights of a secured party to the proceeds from the disposition of collateral. Iowa Code section 554.9306(2) provides:

Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Thus, this section describes the general rule for secured parties, subject to exceptions identified in other sections of the Code. *See* Iowa Code § 554.9307 (protections for buyers of goods). Generally, a security interest not only continues in collateral following its sale or disposition, but it also continues in any identifiable proceeds. *Id.* § 554.9306(2). This section is identical to Uniform Commercial Code (U.C.C.) section 9–306(2). *See* Unif. Commercial Code § 9–306(2), 3A U.L.A. 162 (1992).

Section 554.9306(1) broadly defines "proceeds" to include "whatever is received upon the sale, exchange, or other disposition of collateral or proceeds." However, there is a split in authority whether subsection (2) requires the debtor to receive the proceeds before the security interest will continue in the proceeds. As one court has recognized:

> [U.C.C. § 9–306(2), ... ] is capable of being read to say that proceeds, which include collections, must be received by the debtor, or that the proceeds need not be received by the debtor but the security interest will in any event continue in identifiable proceeds regardless of who receives them and it will also continue in collections received by the debtor.

*Eastern Idaho Prod. Credit Ass'n v. Idaho Gem, Inc.*, 122 Idaho 946, 950, 842 P.2d 282, 286 (1992) (quoting Ray D. Henson, *Secured Transactions Under the Uniform Commercial Code* § 6–1, at 197 (2d ed.1979)).

Those courts that have determined that a security interest continues in proceeds from the sale of the collateral only if the debtor receives the proceeds construe the phrase "received by the debtor" in U.C.C. section 9–306(2) to modify the phrase "identifiable proceeds" as well as the term "collections." *See First Interstate Bank v. Arizona Agrochemical Co.*, 731 P.2d 746, 748 (Colo.Ct.App.1986); *Eastern Idaho Prod. Credit Ass'n*, 842 P.2d at 286–87; *see also Scallop Petroleum Co. v. Banque Trad–Credit Lyonnais (France) S.A.*, 690 F.Supp. 184, 190 (S.D.N.Y.1988); *Norfolk Prod. Credit Ass'n v. Bank of Norfolk*, 220 Neb. 593, 597-98, 371 N.W.2d 276, 279 (1985); *Lake Ontario Prod. Credit Ass'n v. Partnership of Grove*, 138 A.D.2d 930, 932, 526 N.Y.S.2d 985, 986 (N.Y.App.Div.1988). Other courts find a security interest continues in the proceeds regardless of whether the debtor or someone other than the debtor receives the proceeds. *See In re Reliance Equities, Inc.*, 966 F.2d 1338, 1340–41 (10th Cir.1992); *Am. Nat'l Bank v. Cloud*, 201 Cal.App.3d 766, 775-76, 247 Cal.Rptr. 325, 330 (1988); *Producers Cotton Oil Co. v. Amstar Corp.*, 197 Cal. App.3d 638, 649-651, 242 Cal.Rptr. 914, 920 (1988); *Farnum v. C.J. Merrill, Inc.*, 264 A.2d 150, 156 (Me.1970); *Vacura v. Haar's Equip., Inc.*, 364 N.W.2d 387, 392 (Minn. 1985); *Prod. Credit Ass'n v. Melland*, 278 N.W.2d 780, 788–89 (N.D.1979); *Baker Prod. Credit Ass'n v. Long Creek Meat Co.*, 266 Or. 643, 650-51, 513 P.2d 1129, 1132–33 (1973); *Cent. Washington Bank v. Mendelson–Zeller, Inc.*, 113 Wash.2d 346, 779 P.2d 697, 704 (1989). These courts have construed the phrase "received by the debtor" as only modifying "collections." This appears to be the majority rule. *See Centerre Bank, N.A. v. New Holland Div. of Sperry Corp.*, 832 F.2d 1415, 1419 (7th Cir.1987) (citing 9 R.

Anderson, *Uniform Commercial Code* § 9–306:24, at 152 (3d ed.1985)). We have not previously considered this issue.[1]

■ We recognize compelling arguments exist on both sides of the issue. On one hand, the Official Comment to U.C.C. section 9–306 indicates the section "states a secured party's right to the proceeds *received by a debtor* on disposition of the collateral. . . ." Unif. Commercial Code § 9–306, 3A U.L.A. 165 cmt. 1 (emphasis added); *see Centerre Bank, N.A.*, 832 F.2d at 1419 (citing R. Hillman, J. McDonnell & S. Nickles, *Common Law and Equity Under the Uniform Commercial Code* ¶ 22.05[1][b], at 22-55 (1985)); *First Interstate Bank*, 731 P.2d at 748 (Official Code Comment indicates drafters' intent to define proceeds as those actually received by the debtor); *Eastern Idaho Prod. Credit Ass'n*, 842 P.2d at 286 (same). Additional-

ly, if the term "proceeds" in the last clause of section 554.9306(2) takes on its full meaning under section 554.9306(1) so that it is defined without reference to who receives the proceeds, then the definition would necessarily include "collections received by the debtor" and render the phrase superfluous. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.17, at 284–85 (Clark Boardman Callaghan 6th ed.2000). We do not interpret statutes to render any part superfluous. *State v. Jennie Coulter Day Nursery*, 218 N.W.2d 579, 582 (Iowa 1974); *see* 2A Singer, *Sutherland Statutory Construction* § 47.17, at 283–84. These arguments, and · others, support a finding that a security interest continues in proceeds under section 554.9306(2) only if received by the debtor.[2] *See Eastern Idaho Prod. Credit Ass'n*, 842 P.2d at 286–87.

1. We note that our legislature has adopted, for the most part, the new version of Article 9 of the U.C.C., and section 554.9306 is now section 554.9315. *See* 2000 Iowa Acts ch. 1149, § 35 (codified at Iowa Code § 554.9315 (2001)). This act became effective on July 1, 2001. 2000 Iowa Acts ch. 1149, § 187. Under the new version, a security interest continues in collateral after disposal and "attaches to any identifiable proceeds of collateral." Iowa Code § 554.9315(1)(a), (b) (2001). Moreover, the term "proceeds" is not defined by reference to who receives the proceeds. *Id.* § 554.9102(bl)(1)-(5). This new definition resolves the ambiguities in the former section and contains no requirement that the proceeds be received by the debtor. Unif. Commercial Code § 9–102, 3 (Part I) U.L.A. 52–53 cmt. 13(d) (2000) (revised Article 9). It is only necessary for the proceeds to be traceable to the original collateral. *Id.* Thus, the issue we decide today will only impact those cases, like the present case, which arise under the preamendment version of the statute.

2. It is significant that the Uniform Commissioners' 1953 version of section 9–306 limited the rights of a secured party to "proceeds received by the debtor." *See Centerre Bank, N.A.*, 832 F.2d at 1420. In 1956, the U.C.C. Editorial Board recommended the phrase "in-

cluding collections" be inserted for clarification purposes. *Id.* This recommendation was adopted and is the version of section 9–306 that is at issue in this case. *See id.* Thus, an argument exists that the phrase "including collections" was likely inserted to clarify that "proceeds" included "collections." *Id.* However, this interpretation was not written into the Official Comment to the U.C.C. *See Ellefson v. Centech Corp.*, 606 N.W.2d 324, 332 (Iowa 2000) (relying on U.C.C. Official Comment in interpreting Iowa law); *Meyer v. City of Des Moines*, 475 N.W.2d 181, 184 (Iowa 1991) (finding comments to uniform law to be "persuasive authority" in interpreting Iowa law where Iowa law tracks with uniform law). There is no indication our legislature otherwise considered this history in adopting section 554.9306 in 1966. *See* 1965 Iowa Acts ch. 413, § 9306 (codified at Iowa Code § 554.9306 (1966)). In fact, subsequent amendments to section 554.9306 reveal it did not. If our legislature intended the phrase "including collections" to make it clear that the term "proceeds" encompasses "collections," it would not have amended the definition of "proceeds" in 1974 to include collections or it would have removed the phrase at the time of the amendment. *See* 1974 Iowa Acts ch. 1249, § 46 (codified at Iowa Code § 554.9306 (1975)).

On the other hand, the confusion that exists under the statute is essentially due to the placement of the modifying phrase "received by the debtor" in the last clause of section 554.9306(2). This phrase follows the word "collections," and clearly modifies "collections" to mean those "received by the debtor." *See Producers Cotton Oil Co.*, 242 Cal.Rptr. at 920; *Farnum*, 264 A.2d at 150; *Prod. Credit Ass'n*, 278 N.W.2d at 788–89; *Baker Prod. Credit Ass'n*, 266 Or. at 650, 513 P.2d at 1132–33. Yet, if our legislature also wanted to further modify "any identifiable proceeds" to mean only those "received by the debtor," it could have placed the modifier immediately following the word "proceeds." *See id.* Moreover, if our legislature wanted the phrase "received by the debtor" to modify "identifiable proceeds," it would have been unnecessary to include the phrase "including collections." The term "proceeds" includes collections by definition. Iowa Code § 554.9306(1). Thus, just as one interpretation seems to render part of the statute superfluous, so does the other interpretation.

■ We also must consider the statute in its entirety. *State v. DeCamp*, 622 N.W.2d 290, 294 (Iowa 2001). Our legislature defined the term "proceeds" in a very broad manner, without any restriction on who must receive them. *See* Iowa Code § 554.9306(1); *see also In re Munger*, 495 F.2d 511, 513 (9th Cir.1974); *Producers Cotton Oil Co.*, 242 Cal.Rptr. at 921; *Farnum*, 264 A.2d at 156; *Farmers & Merchants Nat'l Bank v. Sooner Co-op., Inc.*, 766 P.2d 325, 327–28 (Okla.1988). The legislature then used this term in defining the scope of the rights of a secured creditor in section 554.9306(2), but provided a more definite meaning of the word by limiting it to "*any identifiable* proceeds." *See* Iowa Code § 554.9306(2) (emphasis added). Thus, the phrase which follows "including

collections received by the debtor" relates to the word "proceeds" only as modified by the adjective "identifiable." *See Farnum*, 264 A.2d at 155. Therefore, we think our legislature intended the phrase "including collections received by the debtor" as a subset of "any identifiable proceeds" so that the concept of "any identifiable proceeds" includes "collections received by the debtor." *See State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 283 (Iowa 2001).

The argument for limiting a security interest in proceeds to only those received by the debtor would be stronger if the legislature had only used the term "proceeds" in section 554.9306(2) without reference to "any identifiable proceeds." However, by modifying proceeds to restrict the security interest to "identifiable proceeds," a purpose arises for including the clause "including collections received by a debtor." This purpose was to include collections received by the debtor within the concept of identifiable proceeds.

■ We think this interpretation gives meaning to all the words in the statute and best accomplishes the goal of the statute to trace proceeds subject to a security interest. *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 573 (Iowa 1997); *see also Humboldt Trust & Sav. Bank v. Entler*, 349 N.W.2d 778, 782–83 (Iowa Ct.App. 1984). Moreover, a debtor should not be able to avoid a secured creditor's right to proceeds by directing payment to an unsecured creditor. *See In re Reliance Equities, Inc.*, 966 F.2d at 1341; *Am. Nat'l Bank*, 247 Cal.Rptr. at 330; *Producers Cotton Oil Co.*, 242 Cal.Rptr. at 919; *Metter Banking Co. v. Fisher Foods, Inc.*, 183 Ga.App. 441, 443, 359 S.E.2d 145, 147 (1987). "To rule otherwise would frustrate the Code's priority rules by allowing a creditor who, as here, gets possession of the proceeds prior to the debtor to take priority over an otherwise superior securi-

ty interest in those proceeds." *Cent. Washington Bank*, 779 P.2d at 704. Such a rule would discourage lending institutions from providing financing to those offering farm products as collateral. *See id.* In addition, the underlying purpose of chapter 554 to create commercial certainty and reliability for secured creditors of farm products would be thwarted. *See Fort Collins Prod. Credit Ass'n v. Carroll Dairy*, 37 Colo.App. 536, 539, 553 P.2d 95, 98 (1976); *Metter Banking Co.*, 359 S.E.2d at 147–48; *Cent. Washington Bank*, 779 P.2d at 705; *see also Baker Prod. Credit Ass'n*, 513 P.2d at 1135 ("Where, as here, the secured party has every reason to believe that its security interest will be recognized . . . there is no reason to hold that the security interest has been extinguished."). It is the role of the legislature, not the courts, to create further exceptions to the rules governing the priority of interests. *Cent. Washington Bank*, 779 P.2d at 705.

Finally, we observe that even those courts that limit the security interest in proceeds only when they are received by the debtor extend the section to also include persons "standing in the shoes of the debtor." *See Eastern Idaho Prod. Credit Ass'n*, 842 P.2d at 287. We think this judicial extension by these courts illustrates a weakness in their interpretation of U.C.C. section 9–306(2), and is actually subsumed in our interpretation of the section as written by the legislature.

We conclude section 554.9306(2) does not require the proceeds to be directly re-ceived by the debtor. *See Prod. Credit Ass'n*, 278 N.W.2d at 788. The payment received by Johnson Chemicals constituted proceeds subject to First State's security interest, even though it was paid to Johnson Chemicals rather than to Yezek. *See Baker Prod. Credit Ass'n*, 513 P.2d at 1132. Thus, the district court erred in sustaining Johnson Chemicals' motion for summary judgment.

## IV.  Conclusion.

The district court granted the motion for summary judgment by Johnson Chemicals on the basis that First State lost its security interest in the collateral when Yezek sold the crop to St. Ansgar Mills, and the security interest did not continue in the proceeds because the proceeds were not received by Yezek. Although First State may have lost its security interest in the collateral under section 554.9307(4)(a), it did not lose its security interest in the proceeds under section 554.9306(2). Thus, we reverse the decision of the district court and remand the case for consideration of the motion for summary judgment filed by First State.

**REVERSED AND REMANDED.**